874 F.2d 766
 Robert D. HAMM, Alice Hamm, William H. Williams, and Kathryn
Williams, Plaintiffs-Appellees, Cross-Appellants,
v.
Sheriff James A. POWELL, etc., Defendant,
Dennis Norred, individually and in his capacity as Sheriff
Deputy of Santa Rosa County, Florida, Bruce Johnson,
individually and in his capacity as Sheriff Deputy of Santa
Rosa County, Florida, Defendants-Appellants, Cross-Appellees.
 No. 88-3166.
 United States Court of Appeals,
Eleventh Circuit.
 June 6, 1989.
 
 Julis F. Parker, Jr., Parker, Skelding, McVoy, Labasky, Jennifer Parker LaVia, Tallahassee, Fla., for defendants-appellants, cross-appellees.
 Ted A. Stokes, Milton, Fla., James A. Johnston, Pensacola, Fla., James F. McKay, Baton Rouge, La., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Northern District of Florida.
 Before HILL and ANDERSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 Appellees were injured in an encounter with the appellants, law enforcement officers, who were undertaking to arrest appellees. The officers were armed. They had been warned that appellants were armed. The encounter, at night, was fraught with danger. The parties' vehicles collided; shots were fired. Robert D. Hamm was struck in his side by a bullet. William H. Williams received a cut on his head. Both were arrested, and Hamm was tried and acquitted. They have brought suit against the officers.
 
 
 2
 Although there were mixed findings and holdings in the trial court, each appellee achieved an award of damages. We conclude that even though appellees did suffer bodily injury in their arrests on charges ultimately dismissed, they were not entitled to recover against the law enforcement officers, and we reverse.
 
 FACTS
 
 3
 In the evening of October 26, 1982, Marlon Wiggins entered the Santa Rosa County Sheriff's office and informed Sgt. Paul Pridgen that he had information concerning a drug deal to occur later that night. Wiggins said that Bob Hamm and a man named "Hub," later identified as William H. Williams, would be involved. Although Sgt. Pridgen believed that Wiggins was slightly intoxicated and might not be fully reliable, he called Bruce Johnson, a narcotics officer with the sheriff's office, who in turn contacted Dennis Norred, Chief Deputy of the office.
 
 
 4
 Upon Norred's arrival at the sheriff's office, Wiggins related that recently he had given the sheriff's department in adjacent Okaloosa County information regarding drug deals. Although Norred's police report read that Johnson did not have time to verify Wiggins' reliability by checking with the Okaloosa County Sheriff's office, both Johnson and an officer from Okaloosa County testified that the Okaloosa officer reported to Johnson on the telephone that Wiggins was reliable because more than a dozen drug dealers had been arrested based on information obtained through Wiggins.
 
 
 5
 Wiggins told Norred that he had met with Hamm earlier that day and had requested Hamm to supply him with "some stuff" to sell. Hamm had held up a bag (which Hamm later testified contained a six-pack of beer and two packs of chewing tobacco) and replied that he had "some stuff right here." In response to Wiggins' inquiry regarding where Hamm was going to be that evening, Hamm told him that he was going to go to the nearby Elco Truck Stop. After placing a listening device on Wiggins, Norred and Johnson, in an unmarked police car, followed Wiggins' vehicle to the truck stop.
 
 
 6
 Wiggins met Hamm in the truck stop's parking lot while "Hub" Williams remained in Hamm's Land Rover vehicle. In a conversation heard by appellants through the listening device, Wiggins asked whether Hamm had the "stuff," and Hamm responded by asking whether Wiggins brought money. Hamm would not allow Wiggins to see the "stuff" unless Wiggins showed him money. Then, Wiggins became angry, and Hamm left to take Williams home. When Wiggins asked Hamm where he was going, Hamm replied that he was "going down the road." Wiggins said that he would follow Hamm.
 
 
 7
 At Williams' request, Hamm turned off the road into the parking lot of Faulk's or Fortune's Store, about a mile from the truck stop. Hamm left his vehicle for a moment, told Wiggins that he would meet with him in a short while after he took Williams home, returned to his vehicle, and began to drive out of the parking lot. Norred and Johnson believed that the conversations that they had overheard confirmed Wiggins' tip that a drug deal would occur. They had followed Hamm's and Wiggins' vehicles, and at a time when all three vehicles were at the Fortune Store's parking lot, Wiggins told the officers through the transmitter that Hamm and Williams possessed "the dope" and guns.
 
 
 8
 As Hamm drove towards the exit of the parking lot, Norred, believing Hamm was trying to flee, tried to block the exit. The vehicles collided and a chase ensued. Appellees testified that they never saw a flashing blue light on the other car and did not know their pursuers were policemen. Hamm testified that he told Williams that "[I've] undoubtedly convinced this joker [Wiggins] ... that I've got something" and that the pursuers might be associates of Wiggins trying to take away "the stuff." At one point when the vehicles were entangled, Johnson observed a flash from the Land Rover and shouted "muzzle flash" to Norred. Once the vehicles came to a momentary stop off the road, Norred jumped from his car and shouted, "Halt, police." As the Land Rover started again and passed the officers, they fired their guns at the vehicle. Hamm was struck by a bullet in his side, and Williams received a cut on his head. Norred and Johnson continued to pursue the Land Rover until it stopped a short distance away. Hamm was arrested at the scene. Williams ran into the woods and was arrested later at his house.
 
 
 9
 No weapon was found on Hamm or Williams. A .22 caliber revolver in the glove compartment had not been fired. No drugs, except for marijuana residue in a canvas pouch, were found. Williams was detained in jail for two days and was released. Hamm was later tried on criminal charges and acquitted.
 
 DISTRICT COURT PROCEEDINGS
 
 10
 In September, 1984, Hamm and Williams filed a complaint against Norred, Johnson, and James A. Powell, sheriff of Santa Rosa County. After summary judgment was granted for Powell, plaintiffs filed an amended complaint against Norred and Johnson, individually and as Sheriff's Deputies of Santa Rosa County. Included among plaintiffs' claims were allegations of violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments and claims under 42 U.S.C. Sec. 1983. The district court denied Norred and Johnson's motion for summary judgment based on qualified immunity grounds; defendants did not then appeal. In a supplemental pre-trial order issued in January, 1988, the district court declared that only false arrest and excessive force claims remained to be tried. During the jury trial, plaintiffs attempted to introduce evidence relating to defendants' probable cause to detain, as distinguished from defendants' probable cause to arrest. The judge denied testimony as to detention, expressing that the case is an "arrest case" and not a "detention case."
 
 
 11
 At the close of plaintiffs' case, defendants moved for a directed verdict on all counts. The court denied the motion on the issue of probable cause to arrest, stating that, although the "overwhelming evidence" indicates that the officers had probable cause to arrest, there was sufficient evidence to indicate that reasonable jurors could possibly find that there was not probable cause. The district judge granted a directed verdict in favor of the defendants on qualified immunity grounds regarding plaintiffs' Fourth Amendment claim of excessive force, but denied defendants' motion for directed verdict based on qualified immunity concerning the plaintiffs' Fifth and Fourteenth Amendments' claim of excessive force. Regarding the Fourth Amendment claim, the court reasoned that at the time of the incident in question there did not exist a Fourth Amendment basis to attack the use of deadly force in making arrest, and therefore defendants were entitled to qualified immunity. In contrast, as to the excessive force claim brought under the Fifth and Fourteenth Amendments, the court concluded that qualified immunity does not apply to a substantive due process claim. Rather, the court decided that the Johnson v. Glick factors apply and should be decided upon by the jury.[1]
 
 
 12
 At the close of all evidence, defendants renewed motions for summary judgment on all claims. The district court reserved judgment regarding the false arrest claim and stated that a jury issue existed as regards to the substantive due process excessive force claim. The jury verdict was returned in favor of the plaintiffs on both the false arrest and excessive force under the Fifth and Fourteenth Amendments claims. Robert Hamm was awarded $200,000, and "Hub" Williams received $85,000 in compensatory damages. Immediately following the reading of the jury's verdict, the district judge granted defendants' motion for a directed verdict on the false arrest claim, but let stand the jury's verdict on the excessive force claim and awards of damages.
 
 DISCUSSION
 Probable Cause
 
 13
 Appellants Norred and Johnson assert two arguments addressing the probable cause to arrest issue. First, they contend that the trial court erred in failing to grant their motion for directed verdict regarding the false arrest claim until after the jury returned a verdict. Second, appellants maintain that the trial court erred in denying their motion for a new trial on the question of damages, after the court had granted their motion for directed verdict concerning false arrest.
 
 
 14
 We hold for appellants regarding both contentions. It is clear that the officers had probable cause to arrest.[2] Information regarding a drug deal received from an informer was apparently verified by the subsequent conversation between the informer and suspected drug dealer that appellants overheard through the listening device. Even appellee Hamm testified that he believed that his words and actions had convinced Wiggins that he possessed and was willing to sell drugs. Moreover, moments before attempting the arrest, appellants were told by the informant, who had been in the appellees' presence, that the appellees possessed drugs and guns. Having received all of this information, appellants reasonably believed that appellees were involved in selling drugs; they had probable cause to make an arrest.
 
 
 15
 Although the district court properly granted a directed verdict in favor of the appellants on the false arrest claim, it did not do so until after receiving the jury's verdict. The case was submitted to the jury with the constitutionality of the arrest an open question. The jury's finding of insufficient cause to arrest led inevitably to a conclusion that the force employed in the arrest was excessive. The failure to instruct the jury that appellants had had adequate cause for the arrest prejudiced them as to appellees' excessive force claim. Furthermore, with regard to the compensatory damages awards, it is impossible to determine how the jury meant to allocate the awards between the false arrest and excessive force claims. Consequently, the jury's verdict regarding the excessive force claim and the damages awards may not stand.
 
 Immunity
 
 16
 Appellants were sued both in their official and personal capacities. Appellants correctly point out that they are protected in their official capacities because Florida has not waived its Eleventh Amendment immunity for actions under section 1983.[3] Regarding appellants' being named in their individual capacities as well, both parties challenge the district court's decisions concerning appellants' qualified immunity. Appellants contend that the trial court erred in denying their motion for directed verdict on the ground of qualified good faith immunity regarding appellees' excessive force claim under the Fifth and Fourteenth Amendments. On cross-appeal, appellees argue that the trial court erred in granting appellants' motion for directed verdict on the ground of qualified good faith immunity regarding their excessive force claim based on the Fourth Amendment.
 
 
 17
 To support their position that appellants are not eligible for qualified immunity regarding the excessive force claim based on either the Fourth Amendment or substantive due process grounds, Hamm and Williams argue that appellants have waived the qualified immunity defense by not invoking it prior to jury trial. As noted above, the district court had denied appellants' pre-trial motion for summary judgment based on qualified immunity grounds, and appellants did not appeal even though a denial of claim of qualified immunity is an immediately appealable order. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Citing the Supreme Court cases of Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and Mitchell, appellees state that qualified immunity entails not merely a defense to liability but also an entitlement not to stand trial. They contend that, because appellants did not appeal the denial of summary judgment and did stand trial, appellants waived their qualified immunity defense.
 
 
 18
 The defense of qualified immunity is not waived if an official chooses not to take an immediate appeal from the denial of a motion for summary judgment. Matherne v. Wilson, 851 F.2d 752 (5th Cir.1988).[4] Mitchell permitted the immediate appeal of an interlocutory order, but it did not require such appeal. By not appealing the denial of summary judgment and standing trial, appellants obviously waived their entitlement not to stand trial. Nevertheless, they did not waive their right not to be held liable for conduct that did not violate clearly established law.
 
 
 19
 In Harlow, the Supreme Court reshaped the doctrine of qualified immunity and held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2727. When granting a directed verdict in favor of appellants regarding appellees' Fourth Amendment claim of excessive force, the district court reasoned that at the time of the incident giving rise to this case, Florida law was either unsettled, or if it were settled, it was settled to the effect that deadly force could be used in effecting a lawful arrest.[5] In addition, it was not until three years after this incident that the Supreme Court held that the use of force to stop a fleeing felon is unconstitutional unless the officer has probable cause to believe the suspect poses a significant threat of death or physical injury to him or others. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); see Lundgren v. McDaniel, 814 F.2d 600, 603 (11th Cir.1987). In attempting to make an arrest for which they had probable cause, appellants, in 1982, reasonably could have believed that engaging in a vehicular collision and firing shots did not violate clearly established statutory or constitutional rights.[6] Thus, we affirm the district court's grant of directed verdict in favor of appellants on qualified immunity grounds regarding appellees' excessive force claim based on the Fourth Amendment.
 
 
 20
 In denying appellants' motion for directed verdict on appellees' excessive force claim based on the Fifth and Fourteenth Amendments, the district court incorrectly stated that qualified immunity does not apply to substantive due process claims. See Clark v. Evans, 840 F.2d 876 (11th Cir.1988); Acoff v. Abston, 762 F.2d 1543 (11th Cir.1985). Qualified immunity applies to the excessive force claim based on substantive due process as well as to the claim based on the Fourth Amendment. Therefore, we reverse the district court's denial of appellants' motion for directed verdict regarding the claim based on substantive due process.
 
 
 21
 The judgment of the district court is REVERSED.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 In Johnson v. Glick, 481 F.2d 1028 (2nd Cir.1973), the Second Circuit wrote in analyzing a substantive due process claim for excessive force: "... a court must look to such factors as the need for the application of force, the relationship between the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." 481 F.2d at 1033. The Eleventh Circuit had adopted the Johnson v. Glick factors as the guiding standards for substantive due process claims. Gilmere v. City of Atlanta, GA, 774 F.2d 1495, 1501 (11th Cir.1985), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Neither Johnson nor Gilmere involved a defense of qualified immunity
 
 
 [2]
 On cross-appeal, Hamm and Williams argue that the district court erred in granting a directed verdict on the false arrest claim after the jury had decided differently. We find no merit in their contention that whether probable cause to arrest existed in this case presented a genuine issue of material fact that should not be resolved by a directed verdict
 We also reject cross-appellants' argument that the court erred in ruling at trial that this was only an "arrest" case and not a "detention" case and thus not presenting the issue of probable cause to detain to the jury. At most, the district court's decision was harmless error for there was probable cause to detain. Even though the gun found at the scene had not been fired and only marijuana residue had been found, the officers had cause to believe that they had been fired upon and that a drug deal had been about to occur.
 
 
 [3]
 County sheriffs and deputies in Florida are state agents for official immunity purposes. Beard v. Hambrick, 396 So.2d 708 (Fla.1981) (construing Sec. 768.28, Fla.Stat.). Florida has not waived its Eleventh Amendment immunity for itself or its agencies and subdivisions, including its officers in their official capacities. Gamble v. Florida Dept. of Health and Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986); Spooner v. Department of Corrections, 514 So.2d 1077 (Fla.1987); Hill v. Department of Corrections, 513 So.2d 129 (Fla.1987); cert. denied, --- U.S. ----, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988)
 
 
 [4]
 See McIntosh v. Weinberger, 810 F.2d 1411, 1431 n. 7 (8th Cir.1987) ("failure immediately to appeal the rejection of a qualified-immunity defense does not bar raising it on appeal after trial"), cert. denied, --- U.S. ----, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988); see also In re Chicken Antitrust Litigation American Poultry, 669 F.2d 228, 236 (5th Cir. Unit B 1982)
 
 
 [5]
 Prior to Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), no Fourth Amendment basis existed to challenge the use of deadly force to make a lawful arrest. In fact, appellants' conduct apparently was authorized by Fla.Stat. Sec. 776.05 that provides: "A law enforcement officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest or when necessarily committed in retaking felons who have escaped or when necessarily committed in arresting felons fleeing from justice." See Lundgren v. McDaniel, 814 F.2d 600, 603 (1987)
 
 
 [6]
 Appellees urge that the district court's denial of a directed verdict for appellants regarding the Fifth and Fourteenth Amendment excessive force claim was correct. They contend that they can rebut appellants' immunity by showing that appellants lacked good faith in using force to effect their arrest. In Harlow, the Supreme Court clearly rejected such a subjective test in favor of the objective test delineated therein. Recently, this court held that "[t]he official's subjective beliefs about the legality of his conduct are irrelevant." Herren v. Bowyer, 850 F.2d 1543, 1546 (11th Cir.1988) (citing Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir.1989)