Alexander BRISK, Plaintiff,

v.

CITY OF MIAMI BEACH, FLORIDA, Kenneth Glassman, Chief of Police of the City of Miami Beach, Steven David Robbins, Joseph Brownlow, Samuel Azicri, Kevin Graham, John Krolak, and Armando Torres, Defendants.

No. 88–2402–CIV.

United States District Court, S.D. Florida.

Dec. 15, 1989.

See also 709 F.Supp. 1146.

**1306**

Isaac Mitrani, Loren Cohen, Miami, Fla., for plaintiff.

Greg Gaebe, David Kleinberg, Coral Gables, Fla., for defendants.

---

## MEMORANDUM OPINION

NESBITT, District Judge.

### I. INTRODUCTION

In this Memorandum Opinion, the Court addresses the following question: When a defendant, who is accused by a plaintiff in a § 1983[1] suit of violating his fourth and fourteenth amendment rights, raises the defense of "qualified immunity" at a trial where many factual issues material to the defense remain in dispute, who should resolve the qualified immunity issue—judge or jury?[2] Because the Eleventh Circuit has never squarely addressed this issue and because the Circuits are split as to who should make this determination,[3] the Court explains below why it submitted the defense of qualified immunity to the jury in this case.

### II. FACTS

On January 4, 1987, Plaintiff Alexander Brisk was driving his taxicab on Collins Avenue in Miami Beach, Florida. He was pulled over by Defendant John Krolak, a Miami Beach police officer, allegedly for improper passing,[4] and was given a citation in the presence of a second officer, Defendant Samuel Azicri. The parties vigorously disputed what transpired subsequent to the stop. Brisk alleged that, after he signed the citation and told Krolak that he would challenge its validity in court, Krolak became very upset and retaliated by citing him for failing to wear a seat belt. Brisk testified that Krolak knew he had been wearing his seat belt, that he was willing to sign the seat belt citation, but that he was not given the opportunity to do so. Other witnesses for Plaintiff testified that the officers, without provocation, began to beat Brisk.

In direct contrast to the testimony of Brisk and other witnesses, Officers Krolak and Azicri claimed that Brisk was properly stopped for improper passing, was not wearing his seat belt, willingly refused to sign the seat belt citation, and, in the

---

**1.** 42 U.S.C. § 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** This question was raised by the Court at a conference held prior to argument on the parties' motions for directed verdicts.

**3.** *Compare Melear v. Spears,* 862 F.2d 1177, 1184 n. 7 (5th Cir.1989) (question for jury) *and Finklestein v. Bergna,* 881 F.2d 702, 704 (9th Cir. 1989) (same) *and Thorsted v. Kelly,* 858 F.2d 571, 573, 575 (9th Cir.1988) (same) *with Coffman v. Trickey,* 884 F.2d 1057, 1063 (8th Cir. 1989) (question for court) *and Cortez–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 561 (1st Cir.) (same), *cert. denied,* —— U.S. ——, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), *and Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985) (same), *cert. dismissed,* 478 U.S. 1044, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986).

**4.** At trial, Plaintiff denied that he violated any traffic laws.

course of violently losing his temper, struck Azicri. After Azicri called for reinforcements, approximately fifteen officers arrived on the scene, including Defendants Officer Graham, Officer Torres, Sergeant Brownlow, and Lieutenant Robbins.

According to Plaintiff's testimony, despite the fact that Brisk did not attempt to strike any of the officers, Defendants (with the exception of Robbins) "hog-tied" Brisk, beat him with a nightstick, and otherwise struck him until he turned blue and stopped breathing. Defendants, however, claimed that they merely used the amount of force necessary to effectuate the arrest of Brisk, whom they characterized as a large man prone to violence.

Brisk was arrested and charged with improper passing, willful refusal to sign a traffic citation, battery on a police officer, and other offenses. At the conclusion of the criminal trial, all felony, misdemeanor, and traffic charges were dismissed, either by the court or as a result of a jury verdict. Brisk claimed that the officers initiated the prosecutions in order to cover up the false arrest and the use of excessive force.

Brisk then brought suit under 42 U.S.C. § 1983 against Azicri, Brownlow, Graham, Krolak, Robbins, and Torres, and against Police Chief Glassman and the City of Miami Beach, Florida.[5] Brisk alleged that the officers violated both his fourth amendment rights to be free from false arrest and excessive force, and his fourteenth amendment right to be free from malicious prosecution. He also claimed that the City of Miami Beach had a custom, practice, or policy which caused these constitutional deprivations.[6]

The defendant officers denied that they violated Brisk's rights, and they raised the defense of qualified immunity.[7] The jury found for the defendants on the false arrest and malicious prosecution claims. However, they found that each of the officers (except Lt. Robbins) had used excessive force on Brisk, that the officers were not entitled to qualified immunity,[8] and that their use of excessive force was caused by a custom, practice, or policy of the City of Miami Beach. They also found for Plaintiff on his § 1983 double jeopardy claim against Officer Krolak.[9]

## III. DISCUSSION

### A. *The Law of Qualified Immunity*

The defense of qualified immunity, enunciated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), provides that government officials performing discretionary functions (including police officers) are shielded from liability if (1) "the law with respect to [their] actions was unclear at the time the cause of action arose," *McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir. 1989) (quoting *Clark v. Evans*, 840 F.2d 876, 879 (11th Cir.1988)), or if (2) "a reasonable officer could have believed [the officer's actions] to be lawful, in light of clearly established law and the information the ... officer possessed." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *McDaniel v. Woodard*, 886 F.2d at 313.

**5.** Brisk also brought several pendent state law claims against Defendants. These claims were dismissed before trial.

**6.** After serving the defendants with the complaint, Brisk was brought before a court and tried a second time on the improper passing charge that had previously been dismissed. Brisk thereafter amended his complaint to include a § 1983 double jeopardy claim against Officer Krolak. Brisk alleged that Krolak lied to the judge at the second trial when asked whether the improper passing charge had already been adjudicated.

**7.** In this case, Defendants did not move for summary judgment. However, the Court notes that the question of whether to send a qualified

immunity defense to the jury when material facts remain in dispute can arise at trial after a motion to dismiss or motion for summary judgment based on qualified immunity has previously been denied by the district court.

**8.** At the charge conference, the parties stipulated that the qualified immunity issue should be submitted to the jury by special interrogatory.

**9.** The jury awarded Brisk $500,000 on his excessive force claim and $20,000 on his double jeopardy claim.

In *Anderson*, the Supreme Court emphasized that an important policy behind its recognition of qualified immunity is to promptly dispose of insubstantial claims such that public officials may avoid the "broad-ranging discovery that can be particularly disruptive of effective government." *Id.* 107 S.Ct. at 3042 n. 6 (quoting *Harlow*, 102 S.Ct. at 2737–38). Thus, courts are strongly encouraged to resolve § 1983 claims prior to discovery and at the summary judgment stage whenever possible. *Id.* at 3039 n. 2. In effect, "the entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in original).[10]

In *Mitchell*, the Court made clear that, in order to effectuate this policy, it is, under certain circumstances, appropriate and even desirable for a court to rule on the qualified immunity issue as a matter of law. For instance, if the plaintiff's *allegations* do not state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Id.* 105 S.Ct. at 2815.[11] Similarly, even if the complaint alleges acts that violated clearly established law, a defendant is enti-

tled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed the alleged acts. *Id.*[12]

■ In this case, however, the Court is not presented with either of the situations envisioned in *Mitchell*. Here, Plaintiff alleged that he was "hog-tied," struck repeatedly with a police nightstick, and otherwise severely beaten without any provocation whatsoever. He further alleged that there was neither probable cause for his arrest for battery because he never hit the arresting officers, nor probable cause to arrest him for willfully refusing to sign a citation because he was never given the opportunity to sign it.

These allegations clearly made out a claim of violations of well-established fourth amendment rights, thereby rendering inappropriate any dismissal before some discovery had taken place. Similarly, because the defendants failed to move for summary judgment based on qualified immunity, the Court had no opportunity before trial to determine whether there existed sufficient evidence to support the allegations of violations of clearly established law.[13] Accordingly, the case proceeded to

---

**10.** The Court in *Mitchell* emphasized that the defense provides immunity from suit in order to support its holding that a district court's denial of summary judgment based on qualified immunity can be an appealable final decision despite the absence of a final judgment. *See Mitchell,* 105 S.Ct. at 2817. Of course, the policies underlying the providing of immunity from suit do not apply once discovery is complete and a case has proceeded to trial. *See* n. 14, *infra.*

**11.** The Court emphasized that, at this point in the litigation, the determinations made by the trial court are legal rather than factual. *See id.* at 2816 n. 9 ("We emphasize at this point that the appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law.").

**12.** At first glance, the Eleventh Circuit appears split on the issue of whether summary judgment is available if there exist disputed facts relevant to the qualified immunity issue. *Compare Peppers v. Coates,* 887 F.2d 1493, 1497 n. 7 (11th Cir.1989) (plaintiff may defeat motion for summary judgment if it can raise genuine issue of fact material to defendant's claim for qualified

immunity) *with McDaniel v. Woodard,* 886 F.2d 311, 313 (11th Cir.1989) ("That factual disputes remain does not preclude summary judgment based on qualified immunity."). However, these cases can be harmonized. The court in *McDaniel* explained that factual disputes do not prevent the granting of summary judgment if the plaintiff's complaint does not allege a violation of clearly established law. *Id.* at 313. In effect, if the plaintiff's complaint does not meet this threshold requirement, any factual disputes existing at the summary judgment stage are not "material." Thus, implicit in the standard stated in *Peppers* is the assumption that the plaintiff has alleged a violation of clearly established law.

**13.** In any event, had the Defendants moved for summary judgment, the Court would have been compelled to deny the motion because enough evidence existed in the record to raise a genuine issue as to whether the defendants did in fact commit the alleged acts. *See Peppers v. Coates,* 887 F.2d at 1497 n. 7 (plaintiff may defeat summary judgment motion if he can raise genuine issue of fact material to qualified immunity claim).

trial with the qualified immunity issue unaddressed and hence unresolved.

### B. Qualified Immunity at Trial

#### 1. The Supreme Court and the Eleventh Circuit

In determining who should decide a qualified immunity defense raised at trial, we are, of course, bound by the teachings of *Harlow, Mitchell,* and *Anderson,* and by the decisions of the Eleventh Circuit. Though the Supreme Court has not explicitly addressed the issue of whether the judge or the jury should decide a qualified immunity defense raised at trial, at least three justices share the view that the defense should go to the jury when material factual issues are in dispute. In his dissent in *Anderson,* Justice Stevens, joined by Justices Brennan and Marshall, recognized "the possibility that the 'objective reasonableness' of the officer's conduct may depend on a factual dispute. Such a dispute ... should not necessarily prevent a jury from resolving the factual issues in the officer's favor and thereafter concluding that his conduct was objectively reasonable." *Anderson v. Creighton,* 107 S.Ct. at 3047 (Stevens, J., dissenting).[14]

Neither has the Eleventh Circuit explicitly addressed this specific issue. In several cases, however, the Eleventh Circuit has tacitly approved of the concept of sending the qualified immunity question to the jury. In *Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989), the court granted summary judgment for the defendant on the ground that there existed no genuine issue of fact material to the qualified immunity defense. In so holding, the court stated that "no jury rationally could find that a reasonable person in the position of [the defendant]

should have known that his conduct violated [the plaintiff's] constitutional" rights. *Id.* at 1499. Apparently, had facts material to the determination been in dispute, the court in *Peppers* would have thought it appropriate to deny summary judgment and to send the question of qualified immunity to the jury. *Cf. id.* at 1498 ("We do not believe that a jury could reasonably infer from the facts that [the defendant] should have known that his conduct violated [the plaintiff's] constitutional rights.").

In *Popham v. Kennesaw,* 820 F.2d 1570 (11th Cir.1987), a § 1983 false arrest/excessive force case decided after *Anderson,* the defendants claimed qualified immunity at trial. The district court instructed the jury on the law of qualified immunity and included in the verdict form a special interrogatory asking whether the defendants were entitled to immunity. In dicta, the panel noted that it need not decide the question of whether police officers can ever receive immunity for the use of excessive force because "the jury found that the defendants here were not entitled to immunity." *Id.* at 1576. The court therefore implicitly approved of sending the issue to the jury because, had it felt that qualified immunity was always a question for the court when raised at trial, the jury's conclusion that the defendants were not entitled to immunity would not have "obviated the need to resolve [the] debate" over the availability of qualified immunity in excessive force cases. *See id.* *See also Lungren v. McDaniel,* 814 F.2d 600, 604 (11th Cir.1987) (after resolving an unrelated issue, court left undisturbed the jury's award of damages in a § 1983 suit despite the district court's submission of qualified immunity question to jury).

---

**14.** The majority in *Anderson* did not address the question of whether qualified immunity can ever go to a jury. However, *Anderson* does not hold that, when material factual issues are in dispute, the court should rule on a qualified immunity issue raised at trial. By the time a § 1983 suit has proceeded to trial and all the evidence has been presented, the policy enunciated in *Anderson* of avoiding the disruption of government caused by discovery and by pretrial preparation has disappeared. Because the primary reason for the Supreme Court's encour-

agement of resolution of the qualified immunity issue by the court rather than the jury is plainly inapplicable in these situations, *see Melear v. Spears,* 862 F.2d 1177, 1184 (5th Cir.1989) ("[T]he policies encouraging pretrial, speedy immunity determinations—in particular the policy favoring avoidance of the process of litigation— do not apply"), *Anderson* should not be read to imply that the district court should decide the qualified immunity issue at trial when facts material to the determination are in dispute.

In a different line of cases, the Eleventh Circuit has, with little discussion, stated that qualified immunity is a question of law for the judge. *See, e.g., McDaniel v. Woodard,* 886 F.2d 311, 313 (11th Cir.1989); *Waldrop v. Evans,* 871 F.2d 1030, 1034 (11th Cir.1989); *Barts v. Joyner,* 865 F.2d 1187, 1189–90 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989); *Parker v. Williams,* 862 F.2d 1471, 1476 (11th Cir.1989); *Rich v. Dollar,* 841 F.2d 1558, 1560 (11th Cir.1988).

This general statement can be distinguished by a close examination of the procedural posture and of the issues addressed in these decisions. First, in *Waldrop, McDaniel,* and *Rich,* a party was appealing either the granting or denial of summary judgment on qualified immunity grounds. Of course, the propriety of a district court's determination that there exists or does not exist a genuine issue of material fact is itself a question of law. *McDaniel,* 886 F.2d at 313; *Rich v. Dollar,* 841 F.2d at 1561 n. 1.[15] Therefore, in these three cases, the Eleventh Circuit was merely stating that, at the summary judgment stage, the applicability of qualified immunity is a question for the court. *See Thorsted v. Kelly,* 858 F.2d 571, 575–76 (9th Cir. 1988) (distinguishing prior Ninth Circuit qualified immunity cases on ground that they were appeals of summary judgment decisions).

This interpretation is supported by the fact that, in every case where the Eleventh Circuit has stated the proposition that qualified immunity is a question for the court, it has cited to the discussion in *Mitchell v. Forsyth* of the "purely legal" nature of the

question of whether qualified immunity is appropriate at the prediscovery and summary judgment stages. *See Waldrop v. Evans,* 871 F.2d at 1034 (citing *Mitchell v. Forsyth,* 105 S.Ct. at 2816); *Barts v. Joyner,* 865 F.2d at 1189–90 (same); *Parker v. Williams,* 862 F.2d at 1476 (same); *Rich v. Dollar,* 841 F.2d at 1560 (same). This reference to *Mitchell* indicates that, in repeatedly stating the "qualified immunity is a question of law" proposition, the Eleventh Circuit was not ruling that, at trial, it is inappropriate to send the issue to the jury where there are disputed issues of fact material to the qualified immunity determination.

Also, a distinction should be drawn between the two prongs forming the qualified immunity inquiry. A court reviewing a claim of qualified immunity must address two questions: (1) whether a given proposition of law is clearly established, and (2) whether a reasonable officer could have believed a defendant's conduct was lawful in light of clearly established law and the information possessed by the officer.[16] In stating that qualified immunity is an issue for the court, the Eleventh Circuit has never stated that the *second* question should be decided by the judge at trial when material facts are in dispute.[17]

For example, in *Barts v. Joyner,* 865 F.2d 1187 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989), a case in which the Eleventh Circuit was not reviewing the denial or granting of summary judgment, the defendant appealed, on grounds of qualified immunity, a judgment entered after a jury verdict for the plaintiff.[18] The court stated that the question

---

**15.** In fact, in the context of a summary judgment motion based on qualified immunity, a court must actually decide *two* questions of law: (1) what was the law at the time of the incident and was it clearly established? and (2) is there a genuine issue of fact as to whether the defendant engaged in the conduct that violated the clearly established law? *See Rich v. Dollar,* 841 F.2d at 1564.

**16.** If a court, relying on facts which are *not* in dispute, finds that the relevant constitutional right was not clearly established, the defendant is entitled to qualified immunity as a matter of

law and the court need not reach the second question.

**17.** In *McDaniel v. Woodard,* 886 F.2d 311 (11th Cir.1989), the court did describe this second question as a "purely legal issue." *Id.* at 313. However, the court was merely reviewing the denial of summary judgment and thus was not resolving factual disputes remaining at trial. Rather, the court "assume[d] the facts to be as plaintiff allege[d] them." *Id.*

**18.** It is unclear from the Eleventh Circuit's opinion in *Barts* whether the qualified immunity issue was raised before the district court.

with which it was faced was whether the constitutional right that was violated by the defendant was clearly established. *Id.* at 1190.

■ Thus, the court's statement in *Barts* that the qualified immunity issue is a question of law was apparently in reference not to the question of whether an objectively reasonable officer could have believed the defendant's conduct to be lawful in light of clearly established law, but rather to the more preliminary question of whether the law at the time of the defendant's conduct was clearly established. When material facts are undisputed, the preliminary question is a legal one,[19] whereas the second issue, the issue of what a reasonable officer could have believed, is a mixed question of fact and law which is appropriate for determination by a jury if material facts remain in dispute at trial. *See Brady v. Gebbie*, 859 F.2d 1543, 1556 (9th Cir.1988) ("Whether ... the legal norm allegedly violated by an official was clearly established is a question of law. Whether a reasonable official would know that she is violating that clearly established law is a question for the jury." (citation omitted)), *cert. denied*, —— U.S. ——, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). *Cf. Peppers v. Coates*, 887 F.2d at 1497 ("*Since these facts are undisputed ... our determination as to the*

validity of [the] qualified immunity claim turns solely on a question of law.") (emphasis added).

Similarly, in *Hamm v. Powell*, 874 F.2d 766 (11th Cir.1989), the court addressed only the preliminary legal question raised by the qualified immunity defense. In *Hamm*, the court affirmed the district court's granting of a directed verdict at trial on qualified immunity grounds. The basis for the trial court's granting of a directed verdict was that the law at the time of the incident was either unsettled or settled to the effect that the defendants' conduct did not violate any constitutional right. *Id.* at 771. Thus, as in *Barts*, the trial court merely answered the preliminary question of what was the law and was it clearly established. It did not resolve disputed facts, and it did not answer the question of whether a reasonable officer could have believed the defendants' to be lawful in light of clearly established law and the information possessed by the defendants.

## 2. A Question for the Jury

■ Precedent, policy, and logic all support the view that the second part of the qualified immunity inquiry should go to a jury when facts material to the determination remain in dispute.[20] First, it is axio-

---

19. In *Anderson, supra,* the Court explained that the relevant legal rule under which the qualified immunity issue is judged must be fact specific. *See id.,* 107 S.Ct. at 3039. ("[The right the official is alleged to have violated must have been 'clearly established' in a ... particularized, and hence more relevant, sense.").

Thus, a district court should be as fact specific as possible when formulating the issue of law and deciding the preliminary question of whether a given legal proposition was "clearly established." At the motion-to-dismiss stage, a district court can simply rely on the facts as set out in the plaintiff's allegations. However, at trial, when the facts needed to formulate the legal issue are in dispute, the court may have to frame the relevant proposition of law in a more generalized fashion when instructing a jury.

This more generalized formulation does not violate the principles enunciated in *Anderson.* The Court in *Anderson* was concerned about a situation where a defendant would be deprived of the benefit of qualified immunity in the early stages of litigation merely because the plaintiff, by framing the relevant legal principle in the most general terms possible, successfully

claimed the law to be clearly established. *See id.* at 3039 (stating that the defense "would be transformed from a guarantee of immunity into a rule of pleading."). Because a court not faced with disputed material facts will maintain the ability to dispose of insubstantial allegations at the motion to dismiss and summary judgment stages of litigation, this risk does not exist when, at trial, a jury is given the opportunity to determine the facts and then decide, in light of the Court's instructions on clearly established law, whether a reasonable officer could have believed the defendant's conduct to be lawful.

20. It should be noted that, regardless of who decides the issue, the defense of qualified immunity is in fact available at trial. *See Thorsted v. Kelly,* 858 F.2d 571, 575 (9th Cir.1988) (collecting cases). *Cf. Hamm v. Powell,* 874 F.2d 766, 771 (11th Cir.1989) ("By not appealing the denial of summary judgment and standing trial, [defendants] did not waive their right not to be held liable for conduct that did not violate clearly established law.").

Denying the right to raise qualified immunity as a defense at trial would needlessly and un-

matic that plaintiffs in § 1983 actions have a right to trial by jury on their claims for monetary damages. *See Burt v. Abel,* 585 F.2d 613, 616 n. 7 (4th Cir.1978) (seventh amendment requires jury trial in § 1983 suit where amount in controversy exceeds twenty dollars); *Mason v. Melendez,* 525 F.Supp. 270, 282 (W.D.Wis.1981) ("[T]he Seventh Amendment clearly guarantees trial by jury in actions for damages under § 1983.").[21] Contained within this right are the doctrines that questions of fact are for a jury and that a federal court cannot predetermine facts for the jury. *See Garcia v. Murphy Pacific Marine Salvaging Co.,* 476 F.2d 303, 306 (5th Cir.1973).

When ruling on the applicability of the qualified immunity defense in cases where material facts are in dispute, the finder of fact will often be forced to resolve many if not all of these disputes. The question of whether a reasonable officer could have believed that a defendant's conduct violated clearly established law can be resolved only by reference to the information possessed by the defendant at the time of the incident in question, *cf. Melear v. Spears,* 862 F.2d 1177, 1183 (5th Cir.1989) ("[The test for qualified immunity] collapses because the relevant law concerning probable cause, at the level of specificity required by *Anderson,* only carries meaning when it is given content by the particular facts of a case."), and what the defendant knew at the time of his conduct is often a hotly disputed factual issue.

Therefore, if, as in this case, factual issues material to the qualified immunity determination are in dispute, allowing the court rule on the immunity defense at trial in effect forces it to resolve the underlying factual disputes. It must examine the evidence, weigh the credibility and observe the demeanor of the witnesses, and perform many other fact-finding functions normally and more appropriately reserved for the jury.

For example, Plaintiff in this case presented evidence that, while driving his cab, he was stopped by one of the defendant officers despite not having committed any traffic offense. He testified that, because he stated he would challenge the traffic citation in court, he was cited for other violations. He also presented evidence that he was beaten for several minutes by many officers despite not threatening them or physically resisting in any way.

By contrast, the defendant officers presented evidence indicating that Plaintiff was properly stopped for a traffic violation, that he willfully refused to sign the traffic citation, and that he struck one of the officers and violently resisted arrest. Based on this evidence, the defendants claimed that Plaintiff was properly arrested and that they used only that amount of force as was necessary to effectuate the arrest.

If forced to decide whether a reasonable officer could have believed defendants' conduct to be lawful, this Court would have had to determine what information the officers possessed at the time of their conduct. To make this determination, it would have had to decide whose evidence to believe, and to what extent to believe it. For, under Plaintiff's version of the facts, no reasonable officer could have believed the defendants' conduct to be lawful. Hence, a court accepting Plaintiff's version of the incident would have been compelled to deny a directed verdict motion. The Defendants would have lost the benefit of qualified immunity merely because the Court, presid-

---

fairly penalize a § 1983 defendant. While an important policy underlying qualified immunity is to quickly dispose of insubstantial claims so as to avoid disruption of government, another public benefit resulting from this defense is a reduced risk that the fear of personal monetary liability will unduly inhibit officials in the discharge of their duties. *See Anderson v. Creighton,* 107 S.Ct. at 3038. A defendant should not lose this important protection merely because a plaintiff is able to point to evidence in the record which creates a genuine issue of material

fact sufficient to defeat the defendant's summary judgment motion.

**21.** The seventh amendment provides that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

ing over a jury trial, chose not to believe their version of the incident.

Similarly, if the Court were to have determined that excessive force was in fact applied, but that an officer in the position of a later-arriving defendant could have reasonably yet incorrectly believed that the amount of force used was necessary under the circumstances,[22] then the Court would have granted a motion for directed verdict based on qualified immunity.[23] Granting a directed verdict under these circumstances would have deprived Plaintiff of his right to have the jury decide exactly what occurred during the incident in question. *See generally Melear v. Spears,* 862 F.2d 1177, 1188 (5th Cir.1989) (Higginbotham, J., concurring) (discussing possibility and effect of various jury findings).

Just as it is inappropriate to deny entirely a party's right to a jury trial, it is equally inappropriate for a court to deprive a party of the right to have a jury resolve factual disputes merely because a resolution is necessary to determine the applicability of the defense of qualified immunity. *See Mason v. Melendez,* 525 F.Supp. 270, 282 (W.D.Wis.1981) (court could not "discern a principled basis on which wholly to withhold from a jury the fact-finding necessary to answer" the immunity issue).

Moreover, it would be anomalous to have a court deny summary judgment because of disputed factual issues and then grant a directed verdict at trial when these same factual issues remain in dispute and when there is sufficient evidence in the record to allow a jury to find for either party as to those issues. A court adhering to this procedure would in effect be saying that, though Fed.R.Civ.P. 56 precludes the

weighing of evidence at the summary judgment stage, Fed.R.Civ.P. 50 does not preclude the weighing of evidence when ruling on a directed verdict motion at trial.

This view is clearly an incorrect application of both the Federal Rules of Civil Procedure and the standard for reviewing directed verdict motions. A directed verdict is appropriate when there can be but one reasonable conclusion as to the verdict. *Pelletier v. Stuart–James Co., Inc.,* 863 F.2d 1550, 1554 (11th Cir.1989). In a recent decision, the Eleventh Circuit has indicated that this traditional standard for reviewing directed verdict motions is equally applicable in qualified immunity cases. *See Peppers v. Coates,* 887 F.2d 1493, 1498 n. 9 (11th Cir.1989) (in reversing the district court's denial of summary judgment on qualified immunity grounds, court implied that, had this case been at the directed verdict stage, correct standard would have been "whether a reasonable jury could return a verdict in favor of the nonmoving party."). *Cf. Melear v. Spears,* 862 F.2d 1177, 1184 n. 7 (5th Cir.1989) (*Anderson* does not create exception to deferential standard of review applicable to JNOV motions). It is therefore not this Court's role to deviate from the usual standard of review applicable to directed verdict motions. When disputed facts material to the qualified immunity issue exist and reasonable jurors could reach differing conclusions regarding those facts, it is inappropriate for the district court to grant a directed verdict based on qualified immunity.[24]

Sending to the jury the necessarily fact-specific question of whether qualified immunity applies in a particular case comports with the practice of sending other

**22.** Of course, if the finder of fact were to have accepted Defendants' version of the facts in full, it would necessarily have found that no constitutional violation was committed.

**23.** The Court expresses no view as to how it would have ruled had it decided to answer itself the second question posed by the qualified immunity defense.

**24.** *Hamm v. Powell,* 874 F.2d 766 (11th Cir. 1989), does not contradict this conclusion. In *Hamm,* the court affirmed the district court's granting of a directed verdict at trial. However, the directed verdict was based on the trial

court's conclusion that, as a matter of law, the constitutional rules were unsettled or were settled to the effect that the defendants' conduct did not violate the plaintiff's constitutional rights. The Eleventh Circuit panel was not presented with the question of whether it is appropriate to depart from the traditional rule that directed verdict motions should be denied when there are sufficient facts in the record to permit a jury to reach more than one reasonable conclusion as to the objective reasonableness of the defendant's conduct.

mixed questions of fact and law to the jury. For example, juries commonly decide the fact-specific questions raised by the issues of contribution, indemnity, subrogation, the business judgment rule, and comparative negligence.[25] It would be inconsistent for a court to rule that these fact-specific issues should go to the jury and at the same time refuse to send them the defense of qualified immunity merely because it can be appropriate for a court to rule on its applicability earlier in the litigation process.

A common argument advanced by those courts holding that qualified immunity is a question for the judge is that a jury may become confused by having to determine both whether a plaintiff's constitutional rights were violated and whether, despite this violation, the defendants are entitled to qualified immunity.[26] *See, e.g., Jones v. City of Chicago,* 856 F.2d 985 (7th Cir. 1988) (jury might be confused if forced to decide both fourth amendment and qualified immunity issues).

The Court does not find this argument persuasive. In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court implied that the complexity of a case is a factor in determining the existence of the right to a jury trial. *See id.* 90 S.Ct. at 738 n. 10. However, since *Ross,* the Court has on several occasions addressed the seventh amendment question without once considering the practical abilities and limitations of juries. *See Phillips v. Kaplus,* 764 F.2d 807, 814 n. 6 (11th Cir.1985) (collecting cases), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Additionally, in construing the scope of the seventh amendment, the Eleventh Circuit has rejected the notion that the complexity of a case can alone provide the basis for a denial of a jury trial. *See id.* 106 S.Ct. at 814. *See also In re U.S. Financial Securities Litigation,* 609 F.2d 411, 424–32 (9th Cir.1979) (holding that district court erred in striking demands for jury trial on grounds of complexity of law), *cert. denied sub nom, Gant v. Union Bank,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).[27]

Though potentially confusing, determining the applicability of qualified immunity is not beyond the capability of a jury. *See Melear v. Spears,* 862 F.2d 1177, 1184 n. 7 (5th Cir.1989) (jury can properly determine reasonableness of defendant's actions after being instructed according to the *Anderson/Harlow* standard). Certainly, a determination of the applicability of qualified immunity in a fourth amendment § 1983 case is not more complex than the difficult issues faced every day by jurors serving as finders of fact in the long and complicated securities and antitrust trials which are often the subject of a proposed "complexity" exception.

To the extent that the qualified immunity issue may be difficult for a jury to resolve, a court can guard against confusion through appropriate instructions on the law and through specific interrogatories asking the jury to return distinct answers to the

---

**25.** *See, e.g., Cooper Transp. Inc. v. Mincey,* 459 So.2d 339, 342 (Fla.Dist.Ct.App.1984) (issue of comparative negligence peculiarly within the province of the jury).

**26.** Suits alleging violations of the fourth amendment right to be free from unreasonable uses of force present the situation most likely to cause confusion. Under the standard promulgated in *Graham v. Conner,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the use of force in a § 1983 action is judged under the fourth amendment's "reasonableness" standard. *See id.* 109 S.Ct. at 1872 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."). At the same time, the availability of qualified im-

munity turns on the "objective reasonableness" of the defendant's action. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). *Anderson* made it clear that these two standards are distinct. It is possible for a defendant to participate in an unreasonable seizure and still be entitled to qualified immunity because a reasonable officer could have believed that the seizure comported with applicable law. *Id.* 107 S.Ct. at 3041. *See also Graham v. Conner,* 109 S.Ct. at 1873 n. 12.

**27.** Those courts recognizing a complexity exception have construed it very narrowly. *See In re Japanese Electronics Products Litigation,* 631 F.2d 1069, 1088 (3rd Cir.1980) (denial of jury trial appropriate only where complexity of suit is so great that it is beyond the ability of a jury to decide by rational means).

constitutional violation and qualified immunity issues. *See Melear v. Spears,* 862 F.2d 1177, 1188 (5th Cir.1989) (Higginbotham, J., concurring). Though the existence of material factual disputes may somewhat limit the specificity of jury instructions reciting the clearly established law, a district court can give sufficiently thorough instructions to permit a jury to answer the second question raised by the qualified immunity defense.[28]

## IV. CONCLUSION

In summary, the Court finds that if facts material to the determination of a qualified immunity defense remain in dispute at trial, the court should send to the jury the question of whether a reasonable person could have believed the defendant's conduct to be lawful, in light of clearly established law and the information possessed by the defendant.

---

**28.** Once a jury determines whether a reasonable person could have believed that a defendant's conduct was lawful in light of clearly established law, a reviewing court should award its decision the same deference it awards any other jury resolution of a mixed question of fact and law. *See Melear v. Spears,* 862 F.2d at 1188 (Higginbotham, J., concurring) (appellate court owes just deference to jury's qualified immunity determination). By contrast, if material facts are undisputed and a trial court grants qualified immunity on the ground that the law was not clearly established at the time of the incident, this legal determination should be reviewed *de novo* by an appellate court. *Cf. Rich v. Dollar,* 841 F.2d 1558, 1560–61 (11th Cir.1988) (district court's finding that genuine issue of material fact requires denial of summary judgment on qualified immunity grounds is a question of law to be reviewed *de novo* ).