**Syble McDANIEL, Plaintiff–Appellee,**

v.

**Thomas B. WOODARD, IV, individually and in his official capacity as District Judge of Pickens County, Alabama, Defendant–Appellant.**

No. 89–7021.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1989.

Robert M. Weinberg, Asst. Atty. Gen., Montgomery, Ala., for defendant-appellant.

John C. Falkenberry, Birmingham, Ala., for plaintiff-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Syble Z. McDaniel sued Thomas B. Woodard, IV, the state district judge of Pickens County, Alabama,[1] alleging that she was discharged from her employment as Judge Woodard's confidential secretary in violation of her first amendment rights. The district court denied Judge Woodard's summary judgment motion, which asserted qualified immunity. We reverse and remand, directing the district court to enter summary judgment for Judge Woodard in his individual capacity on McDaniels' constitutional claims.

While Ms. McDaniel was serving as Judge Woodard's confidential secretary, she tried to enroll her son in a school program for "gifted" students. Enrollment in the program required a series of tests, which were administered by Ben P. Curry, a licensed professional counselor. In administering the tests, Curry made an error that threatened to disqualify McDaniel's son for admission to the "gifted program."

After consulting with Dr. Jean Spruill of the Psychological Clinic of the University of Alabama, McDaniel became concerned that Curry had committed a misdemeanor by falsely holding himself out as a psychologist. Dr. Spruill told McDaniel that the Curry matter was being investigated and that a criminal prosecution would be pursued if Curry had engaged in unlawful activity. Dr. Spruill provided Judge Woodard with similar information because Curry had testified as an expert witness in Judge Woodard's court. Soon afterward, Dr. Spruill called Judge Woodard again to tell him that, although Curry was not a licensed psychologist, Curry (as a licensed professional counselor) was qualified to conduct testing and evaluations.

A couple of months later, the district attorney visited Judge Woodard's office to speak with McDaniel; she was not in the office, but Judge Woodard was. Judge Woodard then wrote McDaniel a letter instructing her not to assist the district attorney with the Curry matter[2] and to leave the matter to the appropriate authorities because "[t]his office cannot afford, by implication or public impression, to be seen as involved in a prosecutorial function, even by association."[3] Instead of giving the

---

1. Alabama district courts have exclusive original jurisdiction over criminal misdemeanors. Ala. Code sec. 12–2–32 (1975).

2. McDaniel knew some things about Curry by virtue of her work for Judge Woodard; for example, she had listened to tape recordings of Curry's testimony at various hearings before Judge Woodard.

3. The letter read in part:

   ... You have won your fight. You got a gifted program, and you got Ethan in it. It's time to put an end to this matter and let bygones be bygones.

   I have given this matter a lot of thought and have prayed about it. The Bible says "Vengence [sic] is Mine, sayeth the Lord," and this

judge the assurance he sought, McDaniel responded by a note that she would answer the judge's concerns when she felt "calm enough."[4] A little over a week after the district attorney's visit, Judge Woodard learned that McDaniel—to help a friend—had gone with a process server to obtain a restraining order from another judge and to serve a divorce complaint and the restraining order on Judge Woodard's brother. Four days after the papers were served, Judge Woodard fired McDaniel.

## JURISDICTION

■ The district court denied the motion for summary judgment because the court concluded that genuine issues of material fact existed. A district court's denial of summary judgment based on a claim of qualified immunity is immediately appealable if the denial turns on a question of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The district court's determination that genuine issues of material fact preclude summary judgment is itself a conclusion of law. That factual disputes remain does not preclude summary judgment for defendants based on qualified immunity: in reviewing a qualified immunity claim we assume the facts to be as plaintiff alleges them and then determine the purely legal issue of whether those facts show a violation of clearly established rights of which a reasonable official in defendant's circumstances would have known. *Id.* at 527, 105 S.Ct. at 2816-17.

The record before us is adequate for us to conclude that the qualified immunity claim hinges solely on an issue of law; thus, this case is properly before us on appeal.

## QUALIFIED IMMUNITY

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. "In so holding, the Court established an objective standard to make summary judgment and similar judicial decisions appropriate devices to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims....'" *Barts v. Joyner*, 865 F.2d 1187, 1189 (11th Cir.1989) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

When a defendant advances a defense of qualified immunity, the "plaintiff bears the burden of showing that 'the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....'" *Id.* at 1190 (quoting *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816). "The words 'clearly established ... constitutional rights' may not be used to

---

is true. Vengence [sic] is not for us to seek. Vengence [sic] will bring down trouble upon the head of he who seeks it. I am aware of some things ... which let me know that you are going to get into more than you can handle if this matter is pushed any farther. This will also cause this office, and me, trouble which we cannot afford. Pep Johnston [the D.A.] came by here today, and he wants to talk to you. I don't want you to talk to him, except to tell him you want to forget about the whole thing. If you don't want to tell him, I'll tell him for you.

I am very concerned that nothing be done to damage the reputation of this office, and I believe sincerely that this matter has gotten to the point that it is going to cause severe and long-lasting damage to this office....

I would like to have your solemn assurance that this whole business is at an end. I *must*

have this assurance. Let us get back to the business of our everyday lives and the business of this office.
R. 1–12, Exh. 1.

4. McDaniel did speak to the district attorney after she had been fired. The district attorney told her that there probably was insufficient evidence to indict Curry, but that she and Dr. Spruill were entitled to swear out a warrant against Curry. No warrant was ever sworn. According to McDaniel, when she spoke to the district attorney, he did not ask her what she knew about Curry's holding himself out to be a licensed psychologist, and she did not discuss the substance of allegations against Curry. The district attorney had already spoken to a number of people about the Curry matter.

read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms.…" *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986). The Supreme Court has stressed that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

An official will be immune if "the law with respect to [his] actions was unclear at the time the cause of action arose" or if "'a reasonable officer *could have believed* … [his actions] to be lawful, in light of clearly established law and the information … [the officer] possessed.'" *Clark v. Evans*, 840 F.2d 876, 879, 880 (11th Cir. 1988) (quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040) (emphasis added). For purposes of qualified immunity, the plaintiff must do more than simply make "general, conclusory allegations of some constitutional violation or [ ] stat[e] broad legal truisms," *Barts*, 865 F.2d at 1190; "generalities are just not helpful." *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir.1987); *see Clark*, 840 F.2d at 881, 882 (proper inquiry is "fact-specific"; officer who shot and killed fleeing prisoner is immune because "[n]o case ha[d] expressly held that an officer has to first shoot to maim before shooting to kill"). In sum, "the qualified immunity defense … provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

McDaniel alleges that Judge Woodard violated her clearly established first amendment right to discuss a pending criminal investigation with the district attorney. In evaluating the constitutionality of a public employer's termination of an employee in response to the employee's speech, the Supreme Court has balanced the interest of the employee in speaking on matters of public concern against the interest of the employer in performing public services efficiently. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). As this court observed in *Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir.1989),

[b]ecause of this case-by-case approach, "there will rarely be a basis for [an] a priori judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful.

*Id.* at 1323 (quoting *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1025 (5th Cir.1988)). Because the balance of interests in this case is not so clear, we conclude that Judge Woodard is entitled to immunity for discharging McDaniel.

McDaniel claims that she has a clearly established right, if not a duty, to talk to the district attorney about a suspected crime. But the question here is not whether she has a right to speak with the district attorney; the question is whether she has the right to remain employed as a judge's secretary if he has directed her not to speak to the district attorney and she has not accepted that direction. She brings to our attention no case in which a court has held that there is a right to remain employed while refusing to agree not to speak to the district attorney, especially when there is at least an articulable reason why speaking with the district attorney might impair the proper functioning of the judicial office. Judge Woodard expressed in his letter to McDaniel the concern that if McDaniel continued her involvement in the Curry matter, the office might be seen as becoming entangled in the "prosecutorial function." Even assuming that talking with the district attorney about a suspected crime is a clearly established constitutional right—and McDaniel cites no case clearly establishing such a right in this circuit—no

clearly established law indicates that such a right would "inevitabl[y]" outweigh a judge's interest in avoiding the appearance of impropriety. *See Dartland*, 866 F.2d at 1323.

■ A public employer need not actually conduct the *Pickering* balancing test before taking action adverse to the employee's interest. The employer will be immune from personal liability if his act was objectively reasonable; that is, there is no cause of action against the employer unless the law clearly proscribed the adverse act by any similarly situated employer whether the employer tried to strike a *Pickering* balance or not. *Dartland*, 866 F.2d at 1323–24. We therefore "need not decide the precise result of applying the *Pickering* balancing test to this case. We must decide only whether the result would be such that a reasonable official in [Woodard's] place would necessarily know that the termination of [McDaniel] under these circumstances violated [McDaniel's] constitutional rights." *Id.* at 1324.

■ The *Pickering* balancing test is applied only if the employer's actions were motivated by the employee's speech. *Maples v. Martin*, 858 F.2d 1546, 1552 (11th Cir.1988). Judge Woodard contends that he fired McDaniel not because she failed to agree not to speak with the district attorney, but because she served divorce papers on his brother. After the service-of-process incident, he lost confidence in her loyalty and felt he could no longer trust her as a confidential employee. McDaniel argues that this reason would also be unconstitutional as violative of her right to freedom of association in choosing her friends (Judge Woodard's sister-in-law) and her right to assist her friend in petitioning for redress of grievances. We reject McDaniel's argument, as we know of no case—nor can we imagine one—holding that a personal, confidential secretary subject to termination without cause has a right to retain her job while gratuitously helping to obtain and to serve papers—in a hostile divorce case—on her employer's brother during her working hours.

■ Even assuming, however, that McDaniel was fired because of her refusal to agree not to speak with the district attorney, a look at the interests on both sides convinces us that the first amendment interest claimed by McDaniel did not obviously override Judge Woodard's interests. Judge Woodard is not required to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *See Connick v. Myers*, 461 U.S. 138, 154, 103 S.Ct. 1684, 1694, 75 L.Ed.2d 708 (1983). McDaniel was a confidential employee, terminable at will by the judge, under Alabama law.[5] The Supreme Court has indicated that the first amendment rights of confidential public employees may be restricted even more than those of non-confidential public employees. *See generally Rankin v. McPherson*, 483 U.S. 378, 390, 107 S.Ct. 2891, 2900, 97 L.Ed.2d 315 (1987); *Elrod v. Burns*, 427 U.S. 347, 375, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); *Connick*, 461 U.S. at 138, 103 S.Ct. at 1684; *see also Ray v. City of Leeds*, 837 F.2d 1542, 1544 (11th Cir.1988); *Stegmaier v. Trammel*, 597 F.2d 1027, 1038–40 (5th Cir.1979). Courts are reluctant to prevent public employers from firing confidential employees because it seems self-evident that "[y]ou cannot run a government with officials who are forced to keep [their] enemies as their confidential secretaries." *Soderbeck v. Burnett County*, 752 F.2d 285, 288 (7th Cir.), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985).

This court[6], sitting en banc, held that a probation officer's first amendment rights were not violated when he was fired by his employer, a judge, for filing lawsuits on behalf of child abuse victims contrary to the judge's express directions not to file such suits. Judge Gewin, in what became

---

5. Ala.Code sec. 12–17–340(b) (1975).

6. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

the majority opinion for the en banc court, observed:

> every judge ... knows the importance of a cooperative and confidential relationship with staff members. The absence of either cooperation or confidentiality is disruptive and inevitably impairs the operation of any court. Indeed, judges of this court are fully aware of the necessity of such cooperation and confidentiality with secretaries, law clerks, [etc.].

*Abbott v. Thetford*, 529 F.2d 695, 705 (5th Cir.1976) (Gewin, J., dissenting), *rev'd*, 534 F.2d 1101 (en banc) (adopting dissenting opinion), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977). "[W]hether the nature of the employer's public responsibilities are such that a close working relationship is essential" is one factor to be weighed in the *Pickering* balancing. *Connick*, 461 U.S. at 151–54, 103 S.Ct. at 1692. "The paradigm example of this type of environment is the chambers of a judge." *Meeks v. Grimes*, 779 F.2d 417, 423 (7th Cir.1985) (citing with approval *Stegmaier*, 597 F.2d at 1040). Like the situation in *Abbott*, Judge Woodard's ability to carry out his public responsibilities would likely be impaired if he were forced to retain a secretary whose loyalty he questioned. *See Abbott*, 529 F.2d at 708.

Maintaining the appearance of impartiality is an additional factor, not considered in *Abbott*, that weighs heavily in favor of Judge Woodard in this case. There is no doubt that

> [j]udicial ethics reinforced by statute exact more than virtuous behavior; they command impeccable appearance. Purity of heart is not enough. Judges' robes must be as spotless as their actual conduct. These expectations extend to those who make up the contemporary judicial family, the judge's law clerks and secretaries.

*Hall v. Small Business Admin.*, 695 F.2d 175, 176 (5th Cir.1983). McDaniel's involvement with the district attorney in the Curry matter, as Judge Woodard wrote in his letter, was contrary to this interest. Judge Woodard's fear that McDaniel's discussion of and involvement in the matter could be seen as an ethical violation was reasonable. The Alabama Canons of Judicial Ethics provide:

> A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control.

Alabama Canons of Judicial Ethics, Canon 3(A)(6).

In conducting the *Pickering* analysis in *Abbott*, Judge Gewin also considered that, although the probation officer was attempting to do a public service by vindicating the rights of others, the evidence failed to establish that no one other than a probation officer of the court was available to vindicate those rights. *Id.* at 705–06 & n. 9. Here, not only was there no evidence that the Curry matter would go unprosecuted without the participation of McDaniel, but rather there was ample assurance that the case against Curry was being fully investigated and would be prosecuted if prosecution were warranted. As was observed in *Abbott*, "the function of the courts and personnel who work closely with judges is not to engage actively in litigation; their function is to achieve effectively the objects and purposes for which the court was created" and "this court ... has enough responsibilities in the discharge of duties regularly assigned, to tax the talents and fully absorb all of the energies of judge and court personnel alike." *Id.* at 705–06.

In the light of *Abbott*, we doubt that Judge Woodard violated the Constitution in discharging McDaniel, but we need not decide that question. It is enough for immunity that—in the light of case law, including *Abbott*—a reasonable official in the circumstances which confronted the judge could have concluded that his actions did not violate his employee's rights. From the undisputed facts, someone in Judge Woodard's position could easily have concluded that McDaniel's participation was not vital to the investigation and prosecution of Curry; that because of the confusion about McDaniel's son's test scores,

McDaniel was or, at least, might appear to be motivated by personal vindictiveness instead of public concern; that the alleged crime was relatively minor; that the importance of keeping the judicial office separate from prosecutorial functions was far-reaching and crucial; and that loyalty, a willingness to comply with instructions, and an appreciation for the sensitive nature of employment at a court of law were necessary qualities in someone who was to act as the judge's confidential secretary if his office was to operate effectively.

Because we conclude that a first amendment analysis would not inevitably lead to the conclusion that Judge Woodard's discharge of McDaniel was unlawful, we hold that Judge Woodard is entitled to immunity. We REVERSE the district court's order denying summary judgment and REMAND for further proceedings consistent with this opinion.