Glynnis T. BATES, Plaintiff–Appellee,

v.

Guy HUNT, individually and as Governor of the State of Alabama; Holman Head, individually and as Executive Secretary/Chief of Staff, Governor's Office, Defendants–Appellants.

Nos. 92–6376, 92–6529.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1993.

Alvin T. Prestwood, Capouano, Wampold, Prestwood, & Sansone, P.A., Thomas B. Klinner, Montgomery, AL, for defendants-appellants.

Julian McPhillips, Jr., Montgomery, AL, for plaintiff-appellee.

Before EDMONDSON and BLACK, Circuit Judges, and MELTON *, Senior District Judge.

EDMONDSON, Circuit Judge:

Defendants, a former Alabama Governor and his Chief Of Staff, appeal denial of summary judgment on First Amendment free speech and Fourteenth Amendment gender discrimination claims made by plaintiff, one of the Governor's assistants. The district court found that some of plaintiff's claims turned on disputed questions of fact and did not grant defendants summary judgment on all claims. Because we can conclude from the record before us that defendants violated none of plaintiff's First Amendment rights and that the Governor is entitled to qualified immunity on the Fourteenth Amendment claim of gender discrimination, we REVERSE and REMAND.

### I. Facts and Background

Governor Guy Hunt of Alabama appointed Glynis Bates to his staff after interviewing her personally. Bates worked as an administrative assistant in the Governor's Office of Constituent Affairs from September 1988 to October 13, 1989. On that day, the Governor fired Bates.

Bates was a political appointee on the Governor's staff. The Governor had a total of about fifty political appointees on his staff; and fewer than 10 people, including secretaries, worked in his Office of Constituent Affairs. The Governor had his office directly across the hall from the Office of Constituent Affairs.

Bates served as an at-will, non-merit system employee. Her job required public contact, responding to letters and phone calls communicated to the Governor's office from the Governor's constituents. Some of the work required Bates to represent (at times, to speak before an audience) the Governor's office at public gatherings.

The relationships between Bates and her superiors had been deteriorating for several months. In July 1989, Hunt had fired Bill Heatherly, another worker in the Office of Constituent Affairs. Bates believed that Heatherly had been treated unfairly. Bates, referring to Heatherly's firing, told another employee, "I could not believe what I had seen and that nothing—nothing in this world would ever make any of it right; that it was wrong, it was unethical. I felt it was an absolute crime." She also told her immediate supervisor, "[W]hat I had seen was certainly not Christian-like. It was very dishonest, and it was wrong . . . I had lost my belief

* Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

in him [her supervisor] totally." When Heatherly prepared his suit against Hunt and one of Hunt's office supervisors, Bates voluntarily gave Heatherly an affidavit to support his suit.

Shortly after Bates gave her affidavit, Holman Head, Hunt's Chief Of Staff, recommended placing Bates on administrative leave. On September 15, 1989, Bates was placed on leave. Four weeks later, Hunt fired Bates.

In her suit, Bates charged, among other things, that she was fired in retaliation for giving an affidavit and for making it plain that she would be a witness for Heatherly. She also says that she suffered gender discrimination in violation of the equal protection clause, because her salary was so much less than Heatherly's. Bates sued Hunt and Head in both their individual and official capacities.

The district court dismissed several of Bates's claims, but refused to grant defendants complete summary judgment. In particular, the district court denied defendants summary judgment on Bates's First Amendment claims involving her acts in support of Heatherly's lawsuit and denied defendants qualified immunity in their individual capacities.[1] The district court also refused to dismiss Bates's equal protection claim against Hunt in his individual capacity.[2]

For the sake of this appeal, we accept Bates's allegations that she was fired for giving an affidavit in support of Heatherly's lawsuit against Governor Hunt and one of Hunt's office supervisors, and for her willingness to be a witness on Heatherly's behalf in the lawsuit. We also accept Bates's contention that she had no confidential relationship with the Governor—that is, she was not entrusted with his secrets—and that she was no policy-maker. The record, including Bates's own testimony, does show that Bates's work involved extensive public contact—mostly helping the Governor's constituents—and that at times, Bates had to make personal appearances at public meetings as a direct stand-in for the Governor.

The record also shows that Heatherly's lawsuit was a civil action that accused the Governor and one of the Governor's office supervisors of having intentionally violated the Constitution of the United States, allegedly by firing Heatherly on account of Heatherly's association with Democrats (Governor Hunt was a Republican). The suit also charged that the Governor and others had acted maliciously toward Heatherly. Heatherly's suit demanded money damages, including punitive damages, from the Governor personally.[3]

In addition, the record shows that the affidavit Bates made in support of Heatherly's lawsuit against the Governor was given voluntarily—that is, not pursuant to a subpoena. Bates gave her consent to the use of the affidavit in the Heatherly lawsuit. And, before Bates was fired, a newspaper had published that Bates had given the affidavit supporting Heatherly's battle with the Governor.[4]

## II. Bates's First Amendment Claims

Given these facts, Bates's First Amendment claims present this question: As a mat-

---

**1.** Bates consented to the district court's dismissal of Head, in his official capacity, as a defendant in the case. Head remains a defendant, in his individual capacity, on the free speech claims.

**2.** The district court dismissed Bates's equal pay claim against the Governor in his official capacity: this claim was barred by the Eleventh Amendment under *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974).

**3.** After Bates was fired, Heatherly added another defendant and another count to his suit; in his new count, he claimed that the defendants in his suit had obstructed justice by firing Bates. The

district court ultimately granted the defendants a total summary judgment in Heatherly's case; and, after hearing oral argument, we affirmed under our Rule 36–1.

**4.** Shortly after Heatherly was fired, Bates recommended to him that he see Julian McPhillips, the lawyer who ultimately filed Heatherly's suit against the Governor. In her deposition, Bates could not recall whether or not she also had initiated the call to Heatherly's lawyer in which she offered to make an affidavit. When Bates made her affidavit at McPhillips' office in August 1989, she also spoke to McPhillips about representing her on matters related to her employment.

ter of federal constitutional law, may a political appointee to a Governor's staff of about fifty persons *voluntarily* aid a civil lawsuit for money damages against the Governor personally, which suit charges the Governor and his office supervisor with malicious and intentionally unconstitutional conduct in removing another staffer, and, at the same time, may that appointee maintain, in the Governor's office, her administrative assistant position which entails extensive public contact on behalf of the Governor's office, including personal appearances as the Governor's representative at public gatherings? The answer is "no."

■ The governor of a state is under the Constitution. And public employees retain First Amendment rights to express themselves. The giving of affidavits for use in lawsuits or otherwise acting voluntarily as a witness in a lawsuit is a kind of speech that might be protected by the First Amendment. But, the First Amendment rights of public employees are limited by the right and the duty of the government to act as an efficient employer doing work that matters. Some balancing is required, even when the employee wishes to speak about matters of public importance.[5] *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 151–53, 103 S.Ct. 1684, 1692–93, 75 L.Ed.2d 708 (1983). And, when the controversy comes to court, this balancing is one for the court to make as a matter of law. *See Connick,* 461 U.S. at 150–54, 103 S.Ct. at 1692–94. Furthermore, "[i]t is clear that the First Amendment does not provide a right to continued government employment in a capacity that is inconsistent with, and undermined by, one's off-duty expressive conduct." *Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

■ When the battle line was drawn between Heatherly and the Governor, Bates freely chose to aid her former co-employee in a civil lawsuit against the Governor on whose staff she was employed. In this litigious society, a lawsuit seeking substantial personal damages is similar to a declaration of war against that person. We are reminded of Judge Learned Hand's apt warning: "After now some dozen years exposure I must say that as a litigant, I should dread a lawsuit beyond almost anything else short of sickness and death." *See* Learned Hand, *The Deficiencies of Trials to Reach the Heart of the Matter,* in 3 Association of the Bar of the City of New York, *Lectures on Legal Topics* 89, 105 (1926). Chief Justice Burger observed, "All litigation is inherently a clumsy, time-consuming business." U.S. News & World Report, Dec. 14, 1970, at 40. And the Supreme Court has noted that suits for damages against public officials, in their individual capacities, do interfere with the officials' duties. *See Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Also, "[i]t is a matter of common knowledge that lawsuits tend to discourage harmony and goodwill amongst litigants." *Abbott v. Thetford,* 529 F.2d 695, 705 (5th Cir.1976) (Gewin, J., dissenting), *adopted as opinion of the court,* 534 F.2d 1101, 1102–03 (5th Cir.1976) (*en banc*).

At-will public employees involved in litigation antagonistic to their employers personally have not always fared well when they invoked the First Amendment as a shield from dismissal. For example, in *Correa v. Fischer,* 982 F.2d 931, 936 (5th Cir.1993), the court declined to help four County Attorney's office employees (including long-time clerical workers, assumed to be nonconfidential employees) who were discharged by a new County Attorney, who, before taking office, had been the subject of first a *quo warranto* suit to stop his candidacy and then a perjury

---

**5.** We assume that Bates's affidavit, in the context of the dispute about Heatherly's discharge, involved a matter of public concern. But we do not see this specific dispute about whether Heatherly could serve as an assistant to a Republican governor, while also associating with supposed Democratic Party operatives, to be a matter of great public concern, on par, for example, with allegations of large-scale corruption, such

as bribery or theft by a public officer. Not all matters of public concern are of equal concern. *Cf. Connick,* 461 U.S. at 148, 103 S.Ct. at 1691 (communication touching on possible violation of fundamental constitutional right still matter of only limited public concern). Although the Constitution was invoked, the Heatherly controversy mainly was a dispute between one employee and his employer about internal office matters.

charge upon which the four now-discharged staff members had worked. And, in *McDaniel v. Woodard*, 886 F.2d 311, 315 (11th Cir. 1989), we said that we knew of no constitutional authority that would protect a judge's secretary from being fired from her job for gratuitously helping her friend to obtain and to serve papers—in a hostile divorce case—on the judge's brother during her working hours. *See also Abbott*, 529 F.2d at 702–08 (upholding dismissal of juvenile court employee fired by judge for filing suits that disrupted cooperation among various organizations working on child welfare matters). In reality, voluntarily aiding in litigation against a person or his interests is an extremely hostile act toward that person; and the more personally jeopardized the defendant is by the litigation, the more hostile and worrisome the act of aiding the litigation will be. To say the least, an employer can reasonably believe that someone who *voluntarily* aids a lawsuit for damages against him personally is no ally.

The reality of the consequences of bringing suit against one's employer does not mean that public employees are without protection under the law when they go to court against their employers. Legislation and regulations frequently will protect the employee in his suit. *See, e.g.*, 29 U.S.C. §§ 623(d), 630(b) (Age Discrimination in Employment Act prohibits state governments from discriminating against employees who participate in ADEA proceedings). In addition, we know that the First Amendment will, under some circumstances, protect an employee who sues or aids in litigation against his public employer. *See, e.g., Langley v. Adams County*, 987 F.2d 1473 (10th Cir.1993); *Marshall v. Allen*, 984 F.2d 787 (7th Cir.1993); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir.1989).

 But, whether a governmental employer has improperly infringed on an employee's First Amendment rights turns on the specific facts of the particular case: a "case-by-case" analysis is required. *See Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir.1989). For some categories of employees such as those in a confidential or policy-making relation to their public employer, First Amendment constitutional protection is often slight. *See Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir.1992). More important for this case, we have already recognized another kind of public employee who, like the confidential employee and the policy-making employee, does not have much protection under the First Amendment when he speaks or acts in a hostile way toward his employer: the employee whose job requires extensive public contact on the employer's behalf. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230 (11th Cir.1992). This concept embraces Bates's job in the Governor's Office.[6]

No reasonable fact-finder reading the record could find other than that the essence of Bates's job was to speak and to act as a delegate of the Governor to his constituents. Under *Pickering* balancing, the Constitution, as a matter of law, does not require the Governor to delegate that authority to someone who has *voluntarily* aided a civil lawsuit, like Heatherly's case, for damages against the Governor personally and, thereby, has demonstrated hostility to him. In *these* circumstances, at least, the governor of a state is not required to let his adversaries represent him.

The Governor of Alabama is elected to lead and to serve the state and its people—a mission of extraordinary importance. If he is to be successful in this difficult mission, he must make effective use of his limited staff. And the Governor need not allow events to unfold to the point where disruption and inefficiency in the Governor's office become open and obvious, before he constitutionally can discharge an employee. *See Connick*, 461 U.S. at 151–52, 103 S.Ct. at 1692.[7]

---

6. In her testimony, Bates admitted that she was employed as an administrative assistant to the Governor. Bates tried to distinguish representing the Governor from representing the Governor's office, saying that she did the latter. Under the circumstances of this case, we believe this distinction, if it exists, makes no difference.

7. In Bates's affidavit in opposition to defendants' motion for summary judgment, she said her job did not require "loyalty" to the Governor. Defendants affirmed that "personal loyalty" was required. We see the use of the word "loyalty" as a conclusory allegation on the part of both

The district court erred in denying defendants summary judgment on Bates's First Amendment claims.[8]

## III. Bates's Gender Discrimination Claim

In an amendment to her complaint, Bates also charged Hunt with violating her Fourteenth Amendment equal protection rights by paying Heatherly more than Bates. Bates brought this constitutional law claim under 42 U.S.C. § 1983. The district court dismissed the claim against Hunt in his official capacity, but did not grant Hunt summary judgment in his individual capacity.

The relevant facts are not in question. Heatherly earned $45,000 a year and Bates earned $19,700 a year. Heatherly and Bates performed similar duties in the Governor's Office of Constituent Affairs and held the same title. But Heatherly had nearly ten years' experience in the Alabama state government, including work at the highest level as Director of Alabama's Department of Industrial Relations. In contrast, Bates had no earlier state government experience.

The Governor advances a defense of qualified immunity in his individual capacity on Bates's section 1983 claim. The qualified immunity defense tightly constrains causes of action under section 1983. *See Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.1989). To overcome this defense, Bates must demonstrate that she had a "clearly established" right to earn as much pay as Heatherly, despite their vastly different levels of experi-

ence. *See generally Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). "The words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating the constitutional right in its most general possible terms ..." *McDaniel v. Woodard*, 886 F.2d 311, 313–14 (11th Cir.1989) (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)). Plaintiff instead must show that officials violated a right that was " 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that *what he was doing* violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added).

Treating unequals equally can be unfair. Heatherly and Bates had much different levels of state government experience and were paid much differently. We know of no appellate decision on the Equal Protection clause that holds that the length and the nature of experience in government service cannot be relied on in fixing the pay of employees doing similar work. Bates cites no such case and neither did the district court. Nothing in the Equal Protection clause plainly says that relevant experience cannot be considered.[9]

---

sides that does not create a relevant question of fact for summary judgment purposes. *See Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990) (conclusory allegations do not defeat summary judgment); *Condos v. Conforte*, 596 F.Supp. 197, 199 (D.Nev.1984) (affidavit setting forth legal conclusions could not be treated as factual support for plaintiffs' opposition to summary judgment motion).

We do not conclude that Bates's job required some, much, or little loyalty, as opposed to mere neutrality, toward the Governor. From the record, we conclude that her acts supporting Heatherly were hostile to the Governor and that, considering this conflict and the other circumstances, she had no right to continue as the Governor's assistant.

8. We do not reach the qualified immunity defenses raised by Hunt and Head, in their individual capacities.

9. Bates suggests that Heatherly's earlier experience was irrelevant to the work of the Governor's Office of Constituent Affairs. But the issue is not whether Heatherly's experience was, in fact, relevant to the work; the material issue for summary judgment in the qualified immunity context is whether a reasonable official in the Governor's position could believe that Heatherly's experience was relevant. *Cf. Sims*, 972 F.2d at 1234–35 (illustrating kinds of fact issues immaterial to qualified immunity). Assuming this material issue is ordinarily a question of fact, we conclude on the record before us that no reasonable factfinder could find other than that a person in the Governor's position could reasonably believe that Heatherly's earlier experience was relevant enough to justify paying Heatherly more.

Therefore, we cannot say that Bates has demonstrated that in these circumstances she had a "clearly established" right to be paid the same as Heatherly. The Governor, in his individual capacity, was due summary judgment on this claim.

REVERSED and REMANDED with instructions to grant summary judgment for defendants.