Laverne BLOUNT, Plaintiff,

v.

ALABAMA COOPERATIVE
EXTENSION SERVICE,
et al., Defendants.

Civ. A. No. 92–D–1052–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Oct. 6, 1994.

Solomon S. Seay, Jr., Montgomery, AL, for plaintiff.

Jordan Dorman Walker, Jr., John P. Scott, Montgomery, AL, Thomas D. Samford, III, Auburn, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on defendant Alabama Cooperative Extension Service's motion for summary judgment, filed September 10, 1993. The plaintiff Laverne Blount responded on October 1, 1993. Also, before the court is defendant Alabama Cooperative Extension Service's motion to strike, filed October 8, 1993.

The court finds that the defendants' motion to strike is due to be denied. For the reasons explained below, the defendant's motion for summary judgment as to all counts of the complaint is due to be granted.

## Jurisdiction

This court has subject matter jurisdiction under 28 U.S.C.A. § 1331. Personal jurisdiction and venue are uncontested.

## Facts

Laverne Blount earned a Bachelor of Science degree in vocational home economics from Alabama A & M University in 1965. She was hired by the Alabama Cooperative Extension Service (ACES) on October 21, 1965 as an Extension Home Agent with a salary of $5,340 per year. Blount remained a Extension Home Agent until July 31, 1970 at which time she resigned. She returned to the ACES in 1971 again acting as an Extension Home Agent.

In 1977, the year in which she received a Master of Science degree from Alabama A & M University, Blount was promoted to the position of Associate County Agent. In 1979, she applied for both paid and unpaid leaves from the ACES in order to pursue a doctorate degree at Ohio State University. When the ACES declined to give Blount a leave of absence, she resigned. After completing her course work but not her dissertation, Blount returned to ACES and was reemployed as an Associate County Agent on or about October 1, 1983. Because she was not employed with the ACES during her doctoral studies, she received no tenure credit from the ACES for that time period.

In 1986, Blount became the County Agent of Clarke County, but she left that position to become an Extension Agent on Special Assignment in Auburn, Alabama, where the headquarters of the ACES is located. The special assignment was arranged at Blount's and Extension Assistant Director for Human Resources Dr. James L. Smith's request for the purpose of allowing Blount to complete her Ph.D., which involved the writing of a dissertation. In 1988, Blount received her doctoral degree from Ohio State University. Blount's special assignment was extended until 1991.

In 1991, ACES proceeded to implement a comprehensive reorganization plan for the entire ACES organization. As a part of the reorganization, the state was divided into nine districts, districts which were to be supervised by Extension District Agents (DAs). Of the ten Extension District Agents selected, five were filled by former District Agent Programs (DAPs), which were similar positions of leadership under the 1976 reorganization plan. All of the former DAPs are males.

The following chart illustrates the experience level of the DAPs who were selected as DAs in comparison to Blount's length of service and level of experience while employed by ACES.

**Prior Experience of DAPs Compared to Dr. Blount**

| | William W. Curtis (W/Male) | Paul Waddy (B/Male) | Lawrence S. Hawsey (W/Male) | James O. Conway (W/Male) | Edward J. Coats (W/Male) | Laverne Blount (B/Fem.) |
|---|---|---|---|---|---|---|
| Years ACES Empl. | 27.81 | 24.90 | 24.44 | 22.15 | 22.93 | 20.7 |
| Years County Level Exper. | 15.33 | 12.00 | 11.54 | 9.25 | 10.03 | 20.7 |
| Years Dist. Level Exper. | 10.90 | 12.90 | 12.90 | 12.90 | 12.90 | –0– |

The key determinants of a career ACES employee's salary are length of employment, quality of performance, and relevant educational attainment. Of the three primary qualities, it seems that length of employment is the controlling or most influential factor. Length of employment is critical because performance evaluations and commensurate salary increases rest on years of service. Therefore, in other words, the longer an employee has been employed at a higher level the more the employee's salary will rise. In addition, promotions involving greater responsibility also result in larger base salaries and ultimately, larger raises in pay.

The nine new DAs named after the reorganization in 1991 were William W. Curtis, Paul Waddy, Lawrence S. Hawsey, James O. Conway, Edward J. Coats, LaVerne Blount, Norma McCrory, Rebecca Dollman, Ray Rice, and Wilma Ruffin. Of the nine chosen, six had been employed for a longer period of time than Blount.[1] Three, Rebecca Dollman, Ray Rice, and William Ruffin, had worked for ACES fewer years than Blount, but had worked throughout those periods when Blount was not employed by the ACES and were each employed at higher levels than Blount when selected to be a DA. Ms. Norma McCrory, a white female who was also selected to be a DA, had worked for ACES for twenty-eight years, six of those years had been spent as a County Agent Coordinator, the highest county-level position. Before being named a DA, Blount had never risen to the level of County Agent Coordinator.

Furthermore, performance evaluations also factor into the amount that an employee's salary will be raised. The higher the performance evaluation that an employee receives the larger merit raise increase an employee will receive. After Blount's return to ACES in 1983, she received a full merit raise for each year that she was employed. As a result of merit increases and years of service, Blount's salary increased from $22,320 to $37,500 between the years 1983 and 1991.

Lastly, another important factor in determining the amount of an employer's salary is relevant educational attainment. According to the policies of ACES, raises are awarded for educational achievements that are job related, but not for those which are unrelated or irrelevant or beyond the level required for the position. Dr. Blount received an increase in salary when she received a masters degree in a relevant discipline while serving at the county level. However, Blount did not receive an increase in compensation for earning her doctorate, because it was not required or preferred at the county level. Also, there is no requirement that a DA have earned a doctorate, and therefore, Blount was not entitled to a higher salary as a result of her achievement.

Pursuant to a judgment rendered by this court in previous litigation, ACES has analyzed the salary administration of county-level employees to ensure that the salary levels were not influenced by gender or race discrimination. See Strain v. Martin, No. 840–E (M.D.Ala. June 26, 1992). Two regression analysis are performed yearly on each employee's salary level. In one regression analysis, if the employee's salary is more than one standard deviation from the salary predicted by the analysis for the theoretical white male, the employee's salary is increased until it falls within one standard range of error of the regression analysis. If a discrepancy is found in an employee's salary, the employee's salary is increased. If funds are lacking, the inequity is corrected when funds become available, but prior to the next projected pay increase. The practice eliminates improper disparities in pay among county-level employees. The second regression analysis compares each county agent to all other county agents. As is the case with the first regression analysis, salary level corrections are made for all blacks if undue influence is found by the analysis. Dr. Blount's salary was evaluated yearly with each regression analysis to ensure that she was not treated improperly due to her race or gender.

---

1. William W. Curtis, Paul Waddy, Lawrence S. Hawsey, James O. Conway, Edward J. Coats, and Norma McCrory each had tenure exceeding Blount's and ranging from 22.15 years to 28 years.

Prior to her selection as a DA, Blount's salary was evaluated pursuant to the regression analysis used normally to check county-level employees, and the results indicated that her salary was $281 less than the standard, which was within the range of error. Dr. Thompson then requested that Blount's salary be evaluated, while giving her full credit for her doctorate degree, even though the ACES was not required to do so. The analysis indicated that Blount's salary, then $37,500, should be $40,827, which was an increase of $3,327. In addition, Dr. Thompson evaluated Blount's salary again while considering performance evaluations and raises given at the county level, which Blount had not received because she was working on special assignment at the headquarters in Auburn. The results indicated that Blount had missed $1,173 in raises received by others at the county level, who performed at an average level. Therefore, before promoting Blount to DA, Dr. Thompson increased Blount's base salary by $4,500 from $37,500 to $42,000, giving Blount every benefit of the doubt to increase her base salary to the highest amount possible. No other such adjustments were made for any of the other employees selected to serve as DAs.

All of the ACES who were employees who were promoted to DA received a base salary increase of $5,000. Blount received the $5,000 raise in addition to the other salary adjustments. Also, DAs who were required to move their offices received a $2,500 increase in their base salary as a result of the relocation. Blount also received a relocation allowance because she was required to move to Selma, Alabama in her new role as DA for that district.

The following is a chart depicting each DAs salary prior to being selected, the increase due to their selection as a DA, and their salary after the promotion.

### Salaries Before and After DA Promotions

| Agent | Base Salary Before Add–On | DA & Reloc. Add–On | New DA Base Salary | % Increase |
|---|---|---|---|---|
| **Blount** | **$37,500** | **$7,500** | **$49,500** | **32.00%** |
| Coats | $53,600 | $5,000 | $58,600 | 9.33% |
| Conway | $53,200 | $5,000 | $58,200 | 9.40% |
| Curtis | $57,400 | $5,000 | $62,400 | 8.71% |
| Dollman | $36,200 | $7,500 | $43,700 | 20.72% |
| Hawsey | $51,500 | $5,000 | $56,500 | 9.71% |
| McCrory | $44,500 | $7,500 | $52,000 | 16.85% |
| Rice | $42,000 | $7,500 | $49,500 | 17.86% |
| Ruffin | $41,000 | $7,500 | $48,500 | 18.29% |
| Waddy | $55,900 | $5,000 | $60,900 | 8.94% |

(Def.Br. in Supp. of Mot. for Summ.J. at 18.)

In her complaint, Blount alleges that the defendants discriminated against because of her race and gender in the administration of her salary and because she was made to relocate when she was promoted to DA. In so doing, Blount alleges that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and the Equal Pay Act.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, af-

ter adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

#### I. Title VII Claims [2]

■ Plaintiff Blount asserts two claims under Title VII of the Civil Rights Act of 1964. First, she alleges that she was paid less than her white females or male counterparts for doing the same job, and secondly, she alleges that she was made to relocate when awarded the position of Extension District Agent, whereas the other white females and other males who were selected as Extension District Agents were not made to do so.

#### A. Salary Claim

■ Intentional discrimination can be proved by either direct or circumstantial evidence. "When the plaintiff's evidence is circumstantial, the Supreme Court has developed a three stage framework for focusing the inquiry." *Green v. School Bd. of Hillsborough County, Fla.,* 25 F.3d 974, 978 (11th

Cir.1994). Plaintiff Blount has attempted to prove intentional discrimination through circumstantial evidence. Therefore, the appropriate analytical framework may be found in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–05, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973).

■ First, the plaintiff must create an inference of discrimination by establishing a prima facie case by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). To demonstrate a prima facie case of gender or race discrimination under Title VII for her salary claim, plaintiff Blount must prove that: (1) she is a female, or an African American; and (2) she occupies a position similar to employees who are male or white who are compensated at a higher rate than the Plaintiff. As defendant Thompson concedes, there are three white males and one white female who hold positions as Extension District Agents and who are paid more than Blount. Therefore, the court finds that Blount can state a prima facie case under Title VII only against only Mr. Coats, Mr. Conway, Mr. Hawsey, and Ms. McCrory. "[T]he establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases." *Grigsby v. Reynolds Metal Co.,* 821 F.2d 590, 595 (11th Cir.1987).

■ Secondly, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate nondiscriminatory reason for the pay disparity. *See Green,* 25 F.3d at 978. In the present case, ACES and Thompson assert two primary nondiscriminatory reasons for the discrepancies in pay among the agency's Extension District Agents, the length and history of employment. According to ACES, the key determinants of the level of an employee's salary are length of

---

**2.** Discrimination claims brought under 42 U.S.C. §§ 1981 and 1983 are analyzed under the same framework as Title VII claims. *Mary's Honor Center v. Hicks,* —— U.S. ——, —— –—— n. 1, 113 S.Ct. 2742, 2746–47 n. 1, 125 L.Ed.2d 407 (1993) (noting that the *McDonnell Douglas* framework is fully applicable to racial-discrimi-

nation-in-employment claims under 42 U.S.C. § 1983 and citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) which applied the same framework to § 1981 claims). Therefore, the court's opinion will not delineate between them.

employment, quality of performance, and relevant educational attainment. Of those factors, length of employment and positions held within the ACES are the most important.

Dr. Thompson's burden in rebutting Blount's prima facie case against Mr. Coats, Mr. Conway, Mr. Hawsey, and Ms. McCrory may be met by producing legitimate nondiscriminatory reasons for the pay disparity. As legitimate nondiscriminatory reasons, the defendants explain the differences in pay as a function of differing levels of experience and years of employment, not sex or race. *See St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). As the court noted earlier, Mr. Coats, Mr. Conway, Mr. Hawsey, and Ms. McCrory had all been employed by the ACES for longer periods of time. In addition, each had been employed at higher levels than Blount prior to being promoted. Hawsey, Conway, and Coats all had served at the district level for over 12 years, whereas Blount, prior to being promoted to DA, had no district level experience. Prior to her promotion to DA, Ms. McCrory served for six years as County Agent Coordinator, the highest county-level position and one which Blount never attained.

■ "It is important to note that the burden on the defendant is one of production not persuasion." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992). The court finds that experience and years of employment are legitimate nondiscriminatory reasons for the difference of pay between Blount and the other employees selected as DAs and that the defendants have met their burden of production. Therefore, the burden of proof shifts back to Blount to prove that she was the intentional victim of gender or race discrimination. *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2749. "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." *Brown*, 939 F.2d at 950. In order to prevail on her Title VII claim, Blount must carry the "ultimate burden of persuasion" that she was the victim of discrimination because she was a female, or black, or both. *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2749.

■ The United States Supreme Court defined discriminatory purpose in the following way:

"Discriminatory purpose" ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). In this case, the court has found that the reasons put forth by ACES for the difference in pay are legitimate. However, regardless of whether the court determines that ACES's policies had a discriminatory effect, Blount, in order to prevail, must show that ACES and Dr. Thompson intended for the policies to have a discriminatory effect and chose to follow the practice "because of" the result. "It is not sufficient to show that the defendant was aware that the particular practice would have a discriminatory impact. Instead, the plaintiff must show that the defendant chose the policy for precisely this purpose." *Brown*, 939 F.2d at 953.

Once a defendant *produces* this evidence, the presumption against the defendant is rebutted, destroyed and no longer relevant. Under *Hicks*, evidence of pretext alone does not compel a finding of intentional discrimination; however, evidence of pretext, if it exists, can support a conclusion of discrimination if corroborated by other evidence. Even so, in order to survive summary judgment at this stage, the Plaintiff must present affirmative evidence that "'the proffered reason was not the true reason for the employment decision' and that race was.'" Mere conclusory statement or reliance on the pleadings, or a mere "scintilla" of supporting evidence will not suffice.

*Sample v. Schuller Int'l, Inc.,* 836 F.Supp. 876 (S.D.Ga.1993) (citations omitted) (citing *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742 (1993)).

 Mr. Strain's affidavit submitted by the plaintiff to create a genuine issue of material fact is ineffectual in this case. The entire focus of the affidavit is past discrimination by the ACES. The past discriminatory practices of the ACES were litigated in this court with Mr. Strain participating as a plaintiff; in fact, the court retains jurisdiction over that same lawsuit. The sum and substance of Blount's claims center around her promotion to DA. Therefore, the court finds that Mr. Strain's affidavit is irrelevant to Blount's claims and does nothing to create a genuine issue of material fact in this case.

 In *Bates v. Hunt,* 3 F.3d 374 (11th Cir.1993), the Court of Appeals for the Eleventh Circuit held that employees with differing levels of experience could be paid different salaries for performing the same job. In doing so, the court opined:

> Treating unequals equally can be unfair. Heatherly and Bates had much different levels of state government experience and were paid much differently. We know of no appellate decision on the Equal Protection clause that holds that the length and the nature of experience in government service cannot be relied on in fixing the pay of employees doing similar work. Bates cites no such case and neither did the district court. Nothing in the Equal Protection Clause plainly says that relevant experience cannot be considered.

*Bates,* 3 F.3d at 379 (Edmonson, J.). The court finds that the plaintiff has failed to meet her burden of proof that ACES's procedures in setting Blount's salary were discriminatory and that ACES chose them because of their effect. As the Court held in *St. Mary's,* the Court "has no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated.* St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2751. In this case, the court further finds that the ACES, through the efforts of Dr. Thompson, treated Blount more favorably, not less favorably than the others who were promoted to DA by adjusting her salary prior to her promotion. The court finds that based on the evidence presented in this case, Blount has failed to create a genuine issue of material fact in regard to her Title VII salary claim. The court further finds that Blount has presented no evidence from which a reasonable jury could find that the ACES intentionally discriminated against her because of her race or gender. *See Aungst v. Westinghouse Elec. Co.,* 937 F.2d 1216, 1223 (7th Cir.1991) (holding that a self-serving affidavit is insufficient to create a genuine issue of material fact in a discrimination case). "Normally this would be a question for the jury, but where the evidence, taken as a whole, is such that a reasonable jury could not return a verdict for the nonmoving party, summary judgment is appropriate." *Sample,* 836 F.Supp. at 882. Having found that Blount failed to carry her ultimate burden of proving discrimination, the court further finds that as to the Title VII salary claim summary judgment in favor of the defendants is due to be granted.

### B. Relocation Requirement

 The plaintiff also claims that the ACES discriminated against her in violation of Title VII by requiring her to relocate as a condition of her promotion. To establish a prima facie case under Title VII for her relocation claim, Blount must establish that: (1) that she was required to move as a term and condition of her employment, and (2) that white or male DAs were not. Blount can establish a prima facie case only against Mr. Coats, Mr. Conway, Dr. Curtis, Mr. Hawsey, Ms. McCrory, and Dr. Waddy. Each of those are white or male and were not required to move upon their acceptance of a position as a DA.

In selecting which of the three district offices a DA would be assigned, priority was given to past DAPs who were already located in one of the three locations. Secondly, the other DA positions were assigned based the DA's area of expertise and the demographic group to be served. Under the reorganization plan, each regional office was to have a DA in one of the following disciplines, 4–H or

agriculture and natural resources, social services or education, and human sciences. Dr. Blount's discipline is human sciences and education. Although Blount requested to be placed in Auburn, she indicated to Dr. Thompson that she would not mind moving. (Blount dep. at 57–58.) Because Auburn already had a DA whose discipline was education, James O. Conway, Blount was assigned to the Selma office, which needed a DA whose discipline was education. Also, Blount is a member of the demographic group prominent in the area, African American.

■ According to the uncontroverted evidence submitted by the defendants, the assignments of DAs were based upon the discipline of the DA and the DA's demographic group to serve the needs of ACES's consumers. The court finds that assigning DAs based on their disciplines as well as the demographic make-up of the regional offices are legitimate nondiscriminatory reasons for assignment. Because ACES has put forth legitimate nondiscriminatory reasons for their relocation decision, the burden then shifts to Blount to prove that ACES intended to discriminate against her in making her relocate. Blount has produced no evidence of discriminatory intent. Furthermore, the plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate. *Grigsby*, 821 F.2d at 597 (holding that "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination" and will not defeat a summary judgment motion); *see Aungst*, 937 F.2d at 1223. The plaintiff bears the ultimate burden of persuading the trier of fact that she was intentionally discriminated against. *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2751. The plaintiff has presented no evidence from which a reasonable jury could return a verdict in her favor, thus creating a genuine issue of material fact. Therefore, the court finds that there is no genuine issue of material fact as to the relocation claim. As a result, summary judgment in favor of the defendant is due to be granted.

## II. § 1981 Claim

■ The United States Supreme Court held in *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), "that a § 1981 claim pursuant to the making clause is limited to the discriminatory refusal to enter into a contract, or the offer to make a contract on discriminatory terms." *Durrani v. Valdosta Technical Inst.*, 810 F.Supp. 301, 305 (M.D.Ga.1992), aff'd, 3 F.3d 443 (11th Cir.1993). The Civil Rights Act of 1991 changed the law under *Patterson* to broaden the scope of § 1981 to include claims of discrimination in the performance of contracts. However, § 102 of the Civil Rights Act of 1991 may not be applied retroactively to conduct occurring before November 21, 1991. *See, e.g., Goldsmith v. City of Atmore*, 996 F.2d 1155, 1159–1160 (11th Cir.1993) (Johnson, J.) (holding that Civil Rights Act of 1991 changes to § 1981 do not apply retroactively); *Vance v. Southern Tel. & Tel. Co.*, 983 F.2d 1573, 1577 (11th Cir. 1993); *Pepper v. Alabama Power Co.*, No. 93–D–18–E (M.D.Ala. July 29, 1993) (DeMent, J.).

■ Blount alleges discriminatory conduct by the defendants in regard to the performance of her employment contract not in the formation of the contract. Blount's employment contract was created upon her return to ACES in October, 1983. The conduct in question relating to her promotion as a DA occurred in 1991, over seven years after the creation of her employment contract. Since the provisions of the Civil Rights Act of 1991 are not retroactive and § 1981 at the time of the conduct in question only related to the formation of contracts, summary judgment on the Blount's 1981 claim in favor of the defendants is due to be granted.

## III. Equal Pay Act Claim

■ To establish a prima facie case under the Equal Pay Act, Dr. Blount must show that she has performed substantially the same work as a male co-worker in a similar position, but for less pay. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1526 (11th Cir.1992). After a plaintiff presents a prima facie case, the defendant must

establish an affirmative defense provided for under the Equal Pay Act. If a defendant is able to establish an affirmative defense, then the plaintiff "must come forward with affirmative evidence that indicates that the proffered reason for the disparity is actually a pretext for sex discrimination." *Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir.1991); *see Ebert v. Lamar Truck Plaza,* 715 F.Supp. 1496, 1500 (D.Col.1987) (holding that the plaintiff's burden of proving pretext under the Equal Pay Act is a considerable), *aff'd,* 878 F.2d 338 (1989).

■ Dr. Thompson concedes that all DA positions are essentially identical, and that Dr. Blount is paid less than six males. Under the Equal Pay Act, Blount can state a prima facie case against Dr. William W. Curtis, Dr. Paul Waddy, Mr. Edward J. Coats, Mr. James O. Conway, and Mr. Lawrence S. Hawsey. ACES and Dr. Thompson submit that the difference in salary is not due to sex discrimination, but due to length and history of employment.[3]

■ In *Blocker v. AT & T Technology Systems,* 666 F.Supp. 209 (M.D.Fla.1987), the court granted summary judgment against an Equal Pay Act claim where there was disparity in the amount paid to males and females, where the males were paid more for longevity of service. Longevity of service, i.e., number of years employed, is an affirmative defense to a claim under the Equal Employment Act. *See Ebert,* 715 F.Supp. at 1501 (holding that experience is "a particularly strong, legitimate reason for differing pay scales"). "A pay differential does not violate the EPA if it is the result of (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex." *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1018 (11th Cir.1994). Unlike Title VII, the employer's burden is more than one of mere production, but one of persuasion. *Meeks,* 15 F.3d at 1018. After a plaintiff puts forth a prima facie case, if an employer fails to persuade the trier of fact

that "the pay differential was justified under one of the four affirmative defenses," the plaintiff wins. *Id.*

■ Dr. Blount's salary has been checked annually since she rejoined ACES in 1983 to ensure that she was not being discriminated against because of her gender. In addition, when she was promoted to DA, Blount's salary was increased $4,500, unlike any other person promoted in order to make certain that her salary reflected no discrimination, be that discrimination racial or gender. According to the affidavits of Dr. Smith and Dr. Buford, individual employee's length and history of service are primary factors in the determination of an employee's pay, and those factors dictate the fact that all DA's salaries will not be equal. The court finds that the defendants have successfully asserted the affirmative defense of experience or longevity of service.

■ Therefore, since the defendants have successfully put forth an affirmative defense, the burden now shifts to Dr. Blount to prove that ACES's reasons for the differences of salaries of females and males in their positions as DAs were the actual pretexts for sex discrimination. The plaintiff has put forth no evidence that the defendants' reasons were pretextual. As a result, Dr. Blount fails to carry her burden of proof, and summary judgment is due to be granted as to her claims under the Equal Pay Act.

### Conclusion

It is CONSIDERED and ORDERED that the defendant's motion to strike be and the same is hereby DENIED.

For the reasons previously explained, it is further CONSIDERED and ORDERED that the defendants' motion for summary judgment be and the same is hereby GRANTED as to all claims. It is further ORDERED that JUDGMENT be entered in favor of the defendants and against the plaintiff, and that plaintiff take nothing from said suit. It is further

---

**3.** The court finds this argument persuasive considering that Dr. Thompson is a female and that she was the primary decisionmaker in the selection of the DAs and in how their salary should be adjusted. As a female, it seems unlikely that Dr. Thompson would have a bias to discriminate against another woman in the establishment of her salary.

CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against the plaintiff, for which let execution issue.