**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES B. PHILLIPS, SR.,
Plaintiff-Appellant,

v.

TOWN OF PAMPLICO; DOZIER M.
MUNN, SR.; LUCIUS B. EADDY;

SHIRLEY P. COLEMAN; GENE R.
GAINEY; CHARMON G. HAINES, SR.,
Individually and as the Town
Council of the Town of Pamplico,
Defendants-Appellees.

No. 98-1452

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-97-202-4-22)

Submitted: January 5, 1999

Decided: January 21, 1999

Before HAMILTON and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John A. O'Leary, O'LEARY ASSOCIATES, INC., Columbia, South
Carolina, for Appellant.  Robert Thomas King, Mark Wilson Buyck,

III, WILLCOX, MCLEOD, BUYCK & WILLIAMS, P.A., Florence, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff James B. Phillips, Sr., appeals from the district court's order granting summary judgment to Defendants in his civil action alleging that he was wrongfully terminated from his position as Chief of Police for the town of Pamplico in violation of 42 U.S.C.A. § 1983 (West Supp. 1998), and South Carolina state law. For the following reasons, we affirm.

The Town Council hired Phillips at its April 6, 1996, meeting at a salary of $18,000 per year for a six-month probationary period. Mayor Dozier M. Munn, Sr., declined Phillips' request for a written contract the next day. No facts in the record indicate that the Town Council hired Phillips for a particular term or was otherwise restricted in its ability to terminate Phillips' employment. Phillips understood that he reported directly to Mayor Munn but that the Town Council held ultimate authority for implementation of police policies. Specifically, Phillips knew that Council member Shirley P. Coleman served as the town's "Police Commissioner," which Phillips viewed as his liaison between the police department and the Council.

At the October 17, 1994, town meeting, the Council hired Phillips as a "permanent employee" and increased his annual salary to $20,000. Phillips submitted a "Letter of Understanding" which discussed his understanding of the terms and conditions of his employment as Chief of Police and goals he had for the job--including that he had total authority over the department. Again the letter did not reference any expected term of employment.

2

Thereafter, relations between Phillips and the Council, particularly with Coleman, began to deteriorate. Phillips came under criticism by the Council and the mayor for his scheduling of officers, refusal to provide Coleman with a key to his office, hiring an officer with a suspended driver's license, failure to adequately investigate crimes and apprehend suspects, and citizen complaints regarding the department's performance. Because of these concerns, Phillips received several formal warnings and reprimands which were placed in his personnel file.

On May 17, 1996, Phillips filed a document titled "Formal Complaint and Charge" with the Town Clerk. The document, which was signed by three of his officers, listed four specific charges only against Coleman: (1) she regularly "stalked" and harassed officers; (2) she had undermined Phillips' authority and conspired with others to terminate him; (3) she had breached a verbal agreement to not interfere with the operation of the police department; and (4) her interference violated town ordinances. The complaint stated that Coleman's actions had reduced department morale, created dissension, and caused "great stress and hardship upon the staff and officers of this department."[1] The document sought the removal of all reprimands authored by Coleman, that she voluntarily remove herself as Commissioner of Police, and that if Coleman refused to remove herself that the mayor do so himself.

Three days later at its regularly scheduled meeting, the Town Council voted 4-2 to terminate Phillips. The printed agenda for the meeting did not show that Phillips' job performance was an issue to be discussed. Nonetheless, Phillips admitted in his deposition that he had knowledge as of February 1996, that Coleman seriously sought his removal.

Phillips sued the mayor and various Town Council members in their individual and official capacities under § 1983, alleging violations of his First and Fourteenth Amendment rights. The district court granted Defendants' motion for summary judgment for several reasons. First, although the district court found that the "Formal Complaint and Charge" filed by Phillips was in part a matter of public

_____

[1] Joint Appendix ("J.A.") at 17-18.

concern under the First Amendment, the court concluded that the Town Council's interest in ensuring that its police chief fulfilled the demands of the position outweighed Phillips' interest in commenting, as a citizen, about his perception of Coleman's negative interference with the department. See Cromer v. Brown, 88 F.3d 1315, 1325 (4th Cir. 1996). Also, the court alternatively stated that even if it had found against Defendants on this claim, that they were entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Next, the court denied relief on Phillips' Fourteenth Amendment claim because it found he had no protectable property right to which due process would attach. See S.C. Code Ann. § 5-11-40(b) (1976); Jenkins v. Weatherholz, 909 F.2d 105, 107 (4th Cir. 1990); Pittman v. Wilson County, 839 F.2d 225, 229-30 (4th Cir. 1988). On appeal, Phillips alleges the district court erred with respect to each of the above issues.[2]

We review an award of summary judgment de novo. See Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). Summary judgment is only appropriate when the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 973-74 (4th Cir. 1990).

The First Amendment protects public employees from termination of their employment in retaliation for their exercise of speech on matters of public concern. See generally Connick v. Myers, 461 U.S. 138, 145 (1983); Pickering v. Board of Educ., 391 U.S. 563, 573-74 (1968). A public employee's speech about matters of personal interest, however, is not protected. Thus, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment . . . ." Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992) (citing Pickering, 391 U.S. at 568).

_____

**2** The court also declined to exercise its supplemental jurisdiction over the related state law actions and dismissed these claims without prejudice. Phillips, however, does not raise this as error on appeal.

4

This First Amendment protection of speech on matters of public concern, however, must be tempered by the government's interest in governmental effectiveness, efficiency, order, and the avoidance of disruption. Thus, the government is entitled to maintain discipline and ensure harmony as necessary to the operation and mission of its agencies and for this purpose may regulate the speech of its employees or remove employees whose conduct hinders its efficient operation. See Connick, 461 U.S. at 142, 150-52. To determine whether a public employee has stated a claim under the First Amendment for retaliatory discharge, we must determine whether the public employee: (1) was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) had an interest in speaking upon the matter of public concern which outweighed the government's interest in providing effective and efficient services to the public; and (3) speech was a substantial factor in the employee's termination decision. See Stroman, 981 F.2d at 156.

In balancing the public employee's interest in speaking on matters of public concern against the government's interest in providing effective and efficient government through its employees, we must take into account the context of the employee's speech, including the employee's role in the government agency, and the extent to which it disrupts the operation and mission of the agency. See Rankin v. McPherson, 483 U.S. 378, 388-91 (1987) (listing factors to be considered). Thus, we have stated "a public employee, who has a confidential, policy making, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." McVey v. Stacy, 157 F.3d 271, 278 (4th Cir. 1998) (citations omitted); see also Bates v. Hunt, 3 F.3d 374, 378 (11th Cir. 1993) (a confidential or policy-making employee, or one whose job requires extensive public contact on employer's behalf, does not have much protection under the First Amendment when he speaks or acts in a hostile way toward his employer); Gonzalez v. Benavides, 712 F.2d 142, 148 (5th Cir. 1983) (explaining that high-level public executives have little expectation of free speech rights and generally accept employment knowing that speech critical of the employer's policy subjects them to discharge).

The record reveals that Phillips, in his position as Chief of Police, had much contact with the public and was the highest ranking officer

5

in the department and therefore garners less protection to speak out against Council member Coleman's treatment of his department. See McVey, 157 F.3d at 278. Also, Phillips' comments as stated in the "Formal Complaint and Charge" more closely resemble the personal frustrations of an employee with his superior than a matter of public concern. He sought the removal of Coleman as Police Commissioner and the actions she had taken in that role. Asking for the head of your superior in the midst of an acrimonious power struggle can hardly be called a matter of public concern over private interest. Given the strained relations between Phillips and Coleman, the Council essentially was forced to chose between the two, as neither seemed willing to let the other do their perceived jobs without interference. Finally, although Phillips' removal did occur three days after he filed his Complaint, creating the inference that it was a substantial factor in his termination decision, it also appeared to be the last straw in his long standing dispute with Coleman. Thus, we find the district court properly balanced the interests at issue and found Coleman failed to establish a First Amendment claim. See Stroman, 981 F.2d at 159-60.

Because we find no First Amendment violation, we decline to address whether Defendants were entitled to qualified immunity-- although we note qualified immunity rarely is denied in such claims. See DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995) (because of the sophisticated balancing of interests required to determine whether the plaintiff's constitutional rights have been violated in a First Amendment case, "only infrequently will it be `clearly established' that a public employee's speech on a matter of public concern is constitutionally protected"). Regarding Phillips' remaining issue, we affirm on the reasoning of the district court. See generally Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (to maintain a procedural due process claim, claimant must establish a protected property or liberty interest). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6